**Orin F. ROGERS and George Levine,**
**Appellants,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 20495.**

United States Court of Appeals
Fifth Circuit.

July 13, 1964.

Rehearing Denied Nov. 2, 1964.

Joseph P. Manners, Miami, Fla., for appellants.

Donald E. Stone, Asst. U. S. Atty., Miami, Fla., Stuart R. Pollack, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, Chief Judge, BROWN, Circuit Judge, and BREWSTER, District Judge.

TUTTLE, Chief Judge.

This is an appeal from a conviction of the appellants for transporting 191 counterfeit Shell Union Oil Company $1,-000 debentures from Miami, Florida, to Nassau in the Bahamas with knowledge that they were counterfeited, in violation of 18 U.S.C.A. § 2314, and of conspiring to transport such documents in violation of § 371. Appellants here rely principally on their contention that there was insufficient evidence because of the failure by the United States to prove (a) that either of the defendants transported the securities from Miami to Nassau, and (b) that either of them had knowledge that the debentures were counterfeited. The sufficiency of the evidence was preserved by motions by appellants for judgment of acquittal at the end of the Government's case.

The indictment alleged that the date of the substantive crime was December 28, 1960. There was ample evidence from which the jury could have found the following facts:

During the crucial period, George Levine lived in Miami and Orin F. Rogers in Nassau. Rogers was manager of Guarantee Trust Co. in Nassau. In the latter part of December, 1960, Rogers in Nassau received a long distance call from Levine. After the call Rogers remarked to his secretary: "I have to go over to Miami to get something. George didn't want to bring it into the Colony." Rogers' secretary's recollection was that he then went to Miami and returned the following day. Rogers was a passenger aboard an evening flight No. 445, of Bahamas Airways, from Nassau to Miami on December 28, 1960. Rogers made a customs declaration at the Miami Airport Customs office on December 28, 1960. Bahamas Airways passenger list for its evening flight No. 446 from Miami to Nassau on December 28, 1960, showed that a "Rogers, O. F." and a "Levine, G." were aboard. That flight left an hour after Rogers had arrived in Miami. Customs records in the Miami airport completed by a "Orin F. Rogers" and a "George Levine" on their return to Miami on December 30, 1960, showed that they had left the country on December 28, 1960.

When Rogers returned to his office following the December 28, 1960 trip to Miami he had a "brown paper kind of

package inside of (a) zipped portfolio," which, according to his secretary, contained papers looking like "insurance policies or something of that nature" with green or gold edges. Rogers told his secretary at that time that "George had been unduly worried, because when he came through Customs, whatever package that he had that was in his hand they didn't even bother to look * * * When the package was brought through Customs, nobody bothered to look." Rogers' secretary saw Levine in Rogers' office in the latter part of December, 1960.

On December 29, 1960, Rogers called Mr. Henderson, a salesman with Ross & Co., Ltd., a securities brokerage firm in Nassau, to come to Rogers' office. Rogers said that he and Levine wanted to discuss opening a marginal account with Ross & Co., Ltd. and to deposit some bonds with them against which they could borrow. On that date, Henderson did talk to Rogers and Levine at Rogers' office, where he was shown some bonds. They were wrapped in brown paper. The opening of the marginal account and the depositing of the bonds was discussed between the three of them. Henderson told Rogers and Levine that Ross & Co., Ltd. could handle the matter. On December 30, 1960, Henderson again met with Rogers and Levine. They completed a Ross & Co., Ltd. authorization form and delivered the bonds to him. Henderson gave them a receipt made out to them jointly. During the course of the dealings between Henderson on the one hand and Rogers and Levine on the other, they told him they were acting as co-agents for a principal in Miami. They said they had brought the securities to the United States from Cuba.

The counterfeit Shell Oil Company debentures had a face value of $191,000.00. If they had been genuine, their market value at the time involved would have been $168,000.00. Using the bonds as collateral, Ross & Co., Ltd. credited the defendants' marginal account with approximately $116,000.00. During the discussion about opening the marginal account, the defendants asked Henderson whether they would be able to withdraw cash from the account, and they were told that they would be able to do so. When the bonds were given to Henderson, appellants requested initially to withdraw $80,000.00 and to be allowed subsequently to withdraw $20,000.00. On January 3, 1961, Levine inquired of Henderson whether he could get the first check, and was informed that it was not possible because Ross & Co., Ltd. had not then been notified that the bonds had been received in Canada, where the home office of Ross & Co., Ltd. was located. On the following day, defendants again requested the money and were given a check for $80,000.00 payable to the order of both of them jointly. They immediately cashed the check at the local bank. One week later, at Levine's request, Henderson delivered to the defendants a check for $20,000.00, which they immediately cashed. The defendants purchased securities with the balance on their marginal account but Rogers & Co., Ltd. retained possession of the stock certificates.

Henderson never again saw Levine. Rogers terminated his employment with Guarantee Trust Company in January, 1961, and left Nassau. The debentures were counterfeit. The loss of Ross & Co., Ltd. was approximately $100,000.00. The last time Rogers saw his secretary was after he had terminated his employment with the Guarantee Trust Company, and he told her that if the FBI came by and asked her any questions, it would be better if she said nothing. Rogers' written statement made to the FBI admitted his connection with Levine and the bonds, but was exculpatory in that he denied knowledge of the counterfeit nature of the bonds. There was nothing in the statement to indicate that he had any connection with taking them from Miami to Nassau.

It is clear from the foregoing recitation of facts that there was ample evidence from which the jury could find that the bonds were transported by the appellants and that they had knowledge they were counterfeited. The facts surrounding their opening of the brokerage

account and the withdrawal of the sum of $100,000.00 in cash as soon as the funds were released at a time when the bonds, if genuine, had a market value of $168,000.00 when taken in connection with their possession of this large amount of counterfeit bonds, together with the statements made by Rogers to his secretary, build a strong circumstantial case against the appellants. See Barfield v. United States, 5th Cir., 229 F.2d 936; Najjar v. United States, 5th Cir., 152 F.2d 965, and Herman v. United States, 5th Cir., 289 F.2d 362, cert. denied 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93.

Appellants also argue that the district court improperly admitted testimony by Rogers' secretary regarding remarks made to her by Rogers. The complaint is not that they were not admissible as against Rogers since, of course, they were in the nature of admissions by him, but they argue that they were not admissible as against Levine since, so they contend, the statements were not made in furtherance of the conspiracy.

 As to the first statement "I have to go over to Miami to get something. George didn't want to bring it into the Colony", we conclude that this is admissible as an exception to the hearsay rule because it is a statement of Rogers' intention and part of the *res gestae*, giving meaning to his trip to Miami and back. See Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706. As to the second statement, we do not need to decide whether, if proper objection had been made thereto, this statement would have been admissible under the more recent holdings that permit a statement by one conspirator to be received as against another if made during the pendency of the conspiracy and where there is independent evidence of the existence of the conspiracy, and of the objecting party's participation in it. See Carbo v. United States, 9th Cir., 314 F.2d 718, cert. denied, June 1, 1964, 84 S.Ct. 1626, because it is clear that no proper objection was made to the reception of this testimony by the secretary relating what Rogers had stated to her.

We conclude that the trial court was not in error in submitting the case to the jury, and that no error was committed by it in not excluding the challenged testimony.

The judgments are affirmed.