**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Rafael C. GARCIA, a/k/a "El Moto,"**
**Defendant-Appellant.**

**No. 75–2929.**

United States Court of Appeals,
Fifth Circuit.

May 24, 1976.

Rehearing Denied June 23, 1976.

Nago L. Alaniz, San Diego, Tex., Michael Anthony Maness, Houston, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GODBOLD, RONEY, and JAMES C. HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

We are called upon in this case to decide whether the defendant's Sixth Amendment right of confrontation was violated by the trial court's limitation of cross-examination of government witnesses as to the activities of a confidential informer, where the informer was a participant in the criminal transaction charged and a witness at trial, and whether the trial court erred in refusing to submit defendant's requested jury charges on the issues of knowledge and specific intent. Since we answer each of these questions in the negative, we affirm.

A jury convicted the defendant, Rafael C. Garcia, a/k/a "El Moto", of possession with intent to distribute and distribution of cocaine in violation of Title 21, United States

Code, Section 841(a)(1).[1] At the trial the prosecution presented, on its case in chief, only Agent Dracoulis of the Drug Enforcement Administration (DEA) and a chemist. The defendant testified in his own behalf, contradicting the account of Agent Dracoulis in important particulars and seeking to establish that he was merely accompanying his friend, Jesse Gutierrez, and that he was unaware that the substance involved was cocaine. Defendant's wife also testified in his behalf. Jesse Gutierrez, a DEA "confidential informer", was called as a witness on rebuttal by the government.

Agent Dracoulis testified that on September 27, 1974, he had a conversation with a confidential informer (Jesse Gutierrez) whom he had employed to assist the government in its investigation. As a result of that conversation, Dracoulis, DEA Agent Eaks, and Gutierrez met with the defendant on September 30, 1974, at the Corpus Christi International Airport. Gutierrez introduced the agents to defendant as buyers from Arkansas and the four men proceeded in Gutierrez's car to a nearby parking lot. In the car defendant gave Dracoulis a package of cocaine and Dracoulis gave defendant $1200.00 in government funds. Defendant also gave Dracoulis a phone number of a bar where he could be reached with regard to a possible future deal.

On cross-examination defense counsel established that Dracoulis had known Gutierrez for not less than a year and that Gutierrez was usually paid for his employment by the government. On this particular occasion Gutierrez had been paid $250.00. Gutierrez's residence was also testified to by the agent. Defense counsel asked Dracoulis whether the government had made a deal with Gutierrez not to prosecute him in connection with possession of the "stuff" arising out of an earlier incident. The answer was no.

However, the trial court sustained objections to questions regarding Gutierrez's relationship with the government, the existence of DEA files on Gutierrez, and inquiries as to other specific cases on which Gutierrez worked for the DEA. Nor was defense counsel permitted to ask where Dracoulis had first met Gutierrez or whether Dracoulis knew about any problems that Gutierrez might have had in San Diego, Texas. Finally, the trial court sustained an objection to a question as to whether Dracoulis knew that Gutierrez had been charged some months earlier with an offense involving 800 pounds of marijuana.

Defendant took the stand and denied that he knew a cocaine deal was taking place. He alleged that the cocaine belonged to Gutierrez and that Gutierrez had handed it over to Dracoulis and received the money. Defendant also stated that Gutierrez supplied the agent with a phone number.

In rebuttal Jesse Gutierrez, a/k/a "Tenderete", took the stand and denied any part in the transaction. He stated that he was an informant for the DEA and that he had been paid $250.00 for this particular deal. The trial court refused to allow questions as to specifics of other cases on which Gutierrez had worked for the DEA or as to the manner in which he had been operating. In a colloquy with counsel at the bench, the Court told defense counsel that he could ask about any trade or deal that the government had made with Gutierrez in connection with this case and what the background for his assistance to the government might be. When asked if he had any other obligation to the government in connection with this case or that touched on his having to do this kind of work, Gutierrez responded in the negative. Finally, the trial court refused to allow questions with reference to an incident in which Gutierrez and his brother were involved until such time as defense counsel could show that it was relevant.

---

1. 21 U.S.C. § 841(a)(1) provides:

"Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;"

The defendant complains that his cross-examination of the government's witnesses was unduly restricted. He contends that the trial court's exclusion of testimony regarding Gutierrez's credibility, possible bias or prejudice and potentially damaging motives for assisting the government in setting up a transaction with the defendant amounted to a Sixth Amendment deprivation. Under the circumstances we think that the trial court's limitations were proper.

"The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted." *Alford v. United States,* 1931, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624, 629. The trial court in this case clearly recognized that the defense had a right to test the credibility of the informer. Defense counsel was permitted to establish the name and residence of the informer, the fact that he had been working for the drug administration for several months, and that he had been paid $250.00 for his participation in the case. Defense counsel was also permitted to ask whether or not the informer was under any other obligation to the government with regard to the case at hand. Insofar as the trial court limited cross-examination of Agent Dracoulis regarding the informer, the limitation occurred prior to the time when the informer himself had been called as a witness. *Cf. United States v. Godkins,* 5 Cir. 1976, 527 F.2d 1321.

■ Defendant complains most strongly with regard to the limitations placed on him in reference to Gutierrez's alleged involvement in an incident involving 800 pounds of marijuana. It is not suggested that Gutierrez had been convicted for any offense arising from such an incident. Thus, the incident was clearly inadmissible to show general lack of credibility. *See* Fed. Rules of Evidence, Rule 609; *United States v. Banks,* 5 Cir. 1973, 475 F.2d 1367, 1368. However, defendant argues that the inci-

dent was admissible to show that Gutierrez might falsely testify favorably to the government out of fear of prosecution—the so-called "bias theory". *See United States v. DeLeon,* 7 Cir. 1974, 498 F.2d 1327.

It is perfectly clear that normally the mere existence of an arrest is not admissible to impeach the credibility of a witness. *Jenkins v. General Motors Corp.,* 5 Cir. 1971, 446 F.2d 377, *cert. denied,* 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972); *Brown v. Coating Specialists, Inc.,* 5 Cir. 1972, 465 F.2d 340; *Truman v. Wainwright,* 5 Cir. 1975, 514 F.2d 150, 152. The defendant contends, however, that this case comes within an exception to the general rule and that the arrest which he sought to inquire into was admissible. That is, defendant argues that he should have been allowed to show that Gutierrez had been arrested some months prior to defendant's arrest and that Gutierrez had been charged with possession of a controlled substance and that this arrest had been made by Dracoulis himself. Consequently, Gutierrez became a "confidential informer" for the DEA with the possession charge hanging over his head like the Sword of Damocles. That pending charge might therefore be used to pressure Gutierrez into "making" cases for the DEA in order to put his own case in the best light possible. Thus, defense counsel wanted to show to the jury the informer's compromising position which might tend to color his testimony and undercut his credibility. The very fact of his having been charged with an offense, but never prosecuted could arguably be evidence of his prejudice and bias in testifying. Defendant argues that this possibility should, at least, have been presented to the jury for their consideration.

■ We would tend to agree with the defendant that the evidence of such an arrest under these circumstances would probably be admissible to impeach the credibility of a witness. *Cf. United States v. Musgrave,* 5 Cir. 1973, 483 F.2d 327, *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973). The existence of such leverage on the part of the government, or perhaps

even the subjective belief on the part of the witness of its existence, might well be proper impeachment evidence in the circumstances revealed in this record. However, we find that an even more fundamental rule of law mandates an affirmance in the instant case.

 It is axiomatic that the trial court must be apprised of the purpose of any inquiry to which objection is made. That is, the objective of questions propounded on cross-examination must be revealed to the trial court. *Fountain v. United States,* 5 Cir. 1967, 384 F.2d 624, 628, *cert. denied,* 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968); *Rogers v. United States,* 5 Cir. 1964, 334 F.2d 83, 86, *cert. denied,* 380 U.S. 915, 85 S.Ct. 892, 13 L.Ed.2d 800 (1965); *Self v. United States,* 5 Cir. 1957, 249 F.2d 32, 34. Unless the trial court is so informed, the circumstances cannot require reversal unless they amount to "plain error" affecting substantial rights. A painstaking and thorough search of the record in this case fails to reveal that the trial court's attention was ever called to the purpose of the defense counsel's proposed inquiry. The discussion between the court and defense counsel does show some vague references to the fact that the purpose and objective of the proposed line of inquiry was to show bias and prejudice. However, we are clear that defense counsel never articulated his theory as to the admissibility of the mere arrest of the witness in such terms as to present the issue which he now propounds on this appeal.[2] It is impermissible for defense counsel intentionally or inadvertently, to couch his grounds for admissibility in such obscure terms before the trial court, reserving for the appeal a precise statement of grounds. Absent a finding of "plain error" affecting substantial rights, this Court will not interfere with the lower court's ruling. In the instant case the limitations placed upon defense counsel do not amount to "plain error" and we conclude that there was no reversible error.

Defendant also urges that the trial court's refusal to submit certain charges to the jury compels reversal of his conviction. The defense proposed that the trial court submit charges which related to the defendant's knowledge and specific intent much like affirmative defenses. The trial court correctly declined to do so.

 The Court's charge to the jury must be reviewed as a whole. *United States v. Wells,* 5 Cir. 1975, 506 F.2d 924, 926; *United States v. Hill,* 5 Cir. 1974, 496 F.2d 201. The requested charges were covered in the trial court's general charge that the jury must find beyond a reasonable doubt that the defendant knowingly and intentionally possessed the cocaine with intent to distribute it and did distribute it. The trial court also defined knowingly and intentionally. The defendant's proposed "affirmative defense" charges were merely elements in the prosecution's case. The trial court's charge was sufficient.

AFFIRMED.

---

**2.** Indeed, it appears that counsel's approach to the trial resulted in concealing his theory under which the testimony might have been admissible, rather than revealing it. Much attempted cross-examination seemed designed for "discovery" of the government's evidence available for other cases involving other parties in totally unrelated transactions.