COMMONWEALTH vs. DOROTHY L. CHEEK.

Middlesex. January 3, 1978. — March 13, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Evidence,* On cross-examination, Bias. *Practice, Criminal,* Argument by
prosecutor, Questioning by prosecutor.

At a murder trial, there was no error in the exclusion of a question by
defense counsel to a prosecution witness as to whether the witness had
been charged with anything in connection with the case where it was
unclear whether defense counsel was inquiring into bias or into prior
bad conduct and where defense counsel made no offer of proof and did
not pursue the point. [614-615]
At a murder trial, neither the opening argument of the prosecutor in
which he recounted a conversation that allegedly took place in the
defendant's presence nor questions put by the prosecutor to the defend-
ant on cross-examination as to two conversations in her presence were
improper. [615-618]
A prosecutor's closing argument in which he did not misstate the evidence
but merely argued the fair inferences which could be drawn from that
evidence and sought to discredit the defendant's testimony was not im-
proper. [618-619]

INDICTMENT found and returned in the Superior Court on
July 9, 1971.

The case was tried before *Prince,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Albert L. Hutton, Jr.,* for the defendant.

*James W. Sahakian,* Assistant District Attorney, for the
Commonwealth.

BRAUCHER, J. The defendant was indicted for murder in
the first degree and convicted by a jury of murder in the sec-
ond degree. Her appeal brings to us the question whether
her cross-examination of a prosecution witness as to bias was
unduly restricted. She also complains that questions asked

by the prosecutor improperly put before the jury certain conversations, and that the prosecutor's closing argument asked the jury to draw inferences not supported by evidence. We affirm the conviction.

The defendant conceded that Lawrence Rooney shot the victim, Ezra McClain, and that McClain died from the wound. There was evidence of the following facts. About 1:00 P.M. on Sunday, June 6, 1971, the defendant knocked on the door of McClain's apartment and said, "Ezra, let me in, I have something important to tell you." As McClain opened the door, Rooney burst in and pointed a shotgun at McClain, and the defendant followed Rooney into the room. Rooney said, "This is for the fifty stitches," fired one shot which missed McClain, pumped the gun and shot McClain, and started swinging the gun at McClain's head. Rooney and the defendant ran out of the apartment and left in the defendant's automobile.

The trial was largely concerned with the defendant's participation in events earlier the same day. The defendant was Rooney's girl friend. Rooney had accused McClain of stealing money from him, they had fought, and McClain had stabbed Rooney. The defendant and John Brant (an acquaintance of Rooney) had taken Rooney to a hospital; the defendant had then visited McClain and his girl friend in McClain's apartment; Brant and Rooney had obtained the shotgun and some shells, and the three had driven together to the vicinity of McClain's apartment. Brant then left.

The defendant testified that she had knocked on McClain's door to warn him that Rooney was coming. Rooney had been tried earlier and found guilty of murder in the second degree. See *Commonwealth* v. *Rooney,* 365 Mass. 484 (1974). That fact was not disclosed to the jury.

1. *Limitation of cross-examination.* On cross-examination of Brant, defense counsel asked three questions about the stabbing and the procurement of the shotgun. He then asked, "Were you ever yourself charged with anything in connection with this case?" On objection the question was excluded. He noted his exception and said he had no further

questions. The defendant now contends that the trial judge violated her right to confront her accusers, halting her inquiry into bias of the witness at the threshold. See *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 712 (1974).

"It has long been the law in the Commonwealth that parties are entitled as matter of right to reasonable cross-examination of a witness for the purpose of showing bias." *Commonwealth* v. *Michel,* 367 Mass. 454, 459 (1975). But evidence of prior bad conduct may not be used to impeach a witness's credibility except by production of records of criminal convictions. *Commonwealth* v. *Clifford, ante* 293, 305 (1978). It was not clear whether defense counsel was inquiring into bias or into prior bad conduct. "Where the materiality of the evidence is unclear, *the record must disclose* the cross-examiner's reason for seeking an answer to the excluded question. . . ." *Commonwealth* v. *Caine,* 366 Mass. 366, 370 n.4 (1974). Where the judge is unable to see the relevance or purpose of a question, the cross-examiner may reasonably be expected to make some explanation as to how he expects to show bias by means of the witness's answer. See *Commonwealth* v. *Ahearn,* 370 Mass. 283, 286 (1976). Where this is not done, consideration of the alleged error in excluding the question would defeat "an important policy which requires parties to give sufficient notice so that the trial judge may reconsider his or her ruling." *Pires* v. *Commonwealth,* 373 Mass. 829, 838 n.5 (1977).

The failure of defense counsel to pursue the point bolsters our conclusion. The judge made no "unequivocal adverse ruling" against a line of questioning, as in *Commonwealth* v. *Graziano,* 368 Mass. 325, 330 (1975), nor did he exclude "the total inquiry by his several rulings," as in *Commonwealth* v. *Ahearn,* 370 Mass. 283, 287 (1976). Defense counsel could have pursued the point, but he chose not to. See *Commonwealth* v. *DeBrosky,* 363 Mass. 718, 727 (1973). He was not entitled to secrete an error for use on appeal in case the verdict went against him.

2. *Conversations.* The defendant argues that the prosecutor, in his opening statement and in cross-examination of

the defendant, improperly put before the jury the contents of two conversations. First, on the way to the hospital, with the defendant in the back seat of the car, Brant and Rooney "were discussing, telling a story that the wounds of Rooney were received at a ball park and attacked by four boys rather than wounds received from Ezra McClain from the knife of Ezra McClain." Second, while the defendant was in the back seat of the car shortly before the crime, Rooney said to Brant "something to the effect of, I, or we don't want you to get involved, why don't you leave."

In a lobby conference before trial the judge instructed the prosecutor not to include in his opening statement the first of these conversations. Although the conference dealt generally with the prosecutor's intention to include conversations in his opening, he did not mention the second conversation during the conference. In his opening statement he said that there was conversation in the car on the way to the hospital, but did not further describe that conversation. As to the second conversation, he said, "At this time John Brant indicated falsely that his daughter was sick and he had to go home. Rooney had him drive up to Ferry Street, park approximately where the bus is, and told him 'I don't want you' or something to the effect that I or we don't want you to get involved in this, at which time John alighted from the car, went across the street, and called a cab." After the opening, defense counsel asked that the prosecutor be required to specify whether the pronoun was "I" or "we." The judge denied the request, and the defendant excepted.

During the direct examination of Brant by the prosecutor, after a voir dire hearing, the judge excluded testimony as to the conversation on the way to the hospital because it was not sufficiently shown "that she was in fact a participant in concocting the story." Later Brant testified that after he stopped the car near McClain's apartment, "Larry told me to leave, he didn't want to get me involved." The judge sustained the defendant's objection to the conversation, and struck the testimony. In a bench conference, the judge said, "The person in the back seat of the car doesn't

necessarily hear everything that is said in front." He also said that "she was under no compulsion to make any comment."

During cross-examination of the defendant by the prosecutor, she testified that on the way to the hospital Brant and Rooney were talking about the fight, but that she did not remember the details. The prosecutor then asked the first question now objected to, with the preface, "Does it refresh your recollection that . . .." The judge overruled the defendant's objection and told the jury that the question was not to be accepted as evidence. The defendant then testified that her recollection was not refreshed. Later she testified that while the car was parked near McClain's apartment, with her in the back seat, Brant and Rooney had a conversation, but she could not remember all of it. The prosecutor then asked the second question now objected to, again with the preface, "Does it refresh your recollection that . . .." The judge overruled the defendant's objection, and the defendant answered that her recollection had not been refreshed. The judge then refused to give a limiting instruction and refused to hear counsel at the bench.

The defendant's argument, framed in terms of misconduct by the prosecutor, is entirely lacking in merit. There was no disregard of the judge's rulings, as in *Commonwealth* v. *Burke,* 373 Mass. 569, 574 (1977). The prosecutor obviously had a legitimate expectation that Brant would testify to a conversation in the hearing of the defendant shortly before the crime. That conversation would be admissible to show what was known to the defendant. See *Commonwealth* v. *Goulet, ante* 404, 418 (1978). He was not bound to anticipate that the judge, in what may have been an excess of caution, would rule that a conversation in the front seat of the car might not have been heard by the defendant in the back seat. The objection to the pronouns used in the prosecutor's opening statement bordered on the frivolous, and is not now pressed as a distinct ground of reversal.

On cross-examination of the defendant she testified that she had heard at least parts of the conversations now in

question, but that she could not remember the details. It then became proper to attempt to refresh her recollection. *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 818-819 (1973). *Commonwealth* v. *Hartford,* 346 Mass. 482, 486-487 (1963). No abuse of discretion is shown by the judge as to either conversation.

3. *The prosecutor's closing argument.* The defendant argues that the prosecutor on three occasions during his summation asked the jury to find facts and draw inferences "in the total absence of evidence to support the same." The prosecutor argued: (1) The defendant would have known on Sunday morning that Brant and Rooney went to McClain's apartment to inquire about stolen money, contrary to her testimony that she was asleep. (2) Her defense was "tailor-made to try and avoid the evidence as it came in from the Commonwealth." (3) The only way that the shotgun got to the front seat "was from that defendant picking the gun up and giving it to Lawrence Rooney right prior to his loading the gun, the loading which she heard." On each occasion defense counsel interrupted to object. On the first and third occasions the judge instructed the jury that it was for them to say what the evidence was. On the second occasion he said, "The objection is noted and you may proceed."

On each occasion the prosecutor was arguing, from other evidence, that the defendant's testimony was not to be believed. He did not assert that he had personal knowledge of the facts, and he did not misstate the evidence from which he argued that inferences should be drawn. Brant had testified that the defendant was present during the discussion of the stolen money, after which Brant and Rooney left to go to McClain's apartment. He had also testified that the shotgun was in the back seat, where the defendant was, and "found its way" to the front seat. The prosecutor could properly argue the fair inferences from the evidence. *Commonwealth* v. *Burke,* 373 Mass. 569, 575 (1977). *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 315 (1973). He was not bound by the defendant's testimony, and could properly argue that it was not credible. *Com-*

*monwealth* v. *Stone,* 366 Mass. 506, 516 (1974). Such an argument does not become improper merely because it may be understood to reflect adversely on the trial tactics of the defense. See *Commonwealth* v. *Dunker,* 363 Mass. 792, 798-800 (1973).

4. *Section 33E.* On our review of the whole case, we find no occasion to order a new trial or to grant any other relief to the defendant.

*Judgment affirmed.*