**Dorothy CHEEK, Petitioner, Appellee,**

**v.**

**John BATES, Respondent, Appellant.**

**No. 79–1373.**

United States Court of Appeals,
First Circuit.

Argued Nov. 9, 1979.

Decided Feb. 21, 1980.

Robert S. Potters, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for respondent, appellant.

James M. Hughes, Hingham, Mass., by appointment of the Court, with whom Devin & Drohan, P. C., Hingham, Mass., was on brief, for petitioner, appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, WYZAŃSKI,* Senior District Judge.

---

* Of the District of Massachusetts, sitting by designation.

**560**

COFFIN, Chief Judge.

The appellee, Dorothy Cheek, was convicted in Massachusetts Superior Court of second degree murder and sentenced to life in prison. On direct appeal, Cheek argued that she had been denied her Sixth Amendment right to confront the witnesses against her when the trial judge refused to allow a question by her counsel attempting to probe the bias of one of the prosecution's chief witnesses. The Massachusetts Supreme Judicial Court found no reversible error in the trial court's refusal to allow the question and affirmed the conviction. *Commonwealth v. Cheek,* 374 Mass. 613, 373 N.E.2d 1161 (1978). On petition for a writ of habeas corpus, the district court for the District of Massachusetts concluded that Cheek had been denied her right of cross-examination by the trial court's ruling and ordered that her petition for habeas corpus be granted unless the Commonwealth provided a new trial by October 31, 1979. The district court has stayed its order pending this appeal by the Commonwealth.

On the afternoon of June 6, 1971, Lawrence Rooney shot and killed Ezra McClain in McClain's Malden, Massachusetts apartment. Also present at the time of the murder were Dorothy Cheek and Janet Coviello, McClain's girlfriend. Rooney and Cheek were convicted in connection with the shooting.

Rooney's murder of McClain was the culmination of a series of events beginning early that morning at Cheek's apartment. Rooney complained to one Brant, who had come to the apartment to borrow Cheek's car, that someone had stolen $436 from him the night before and said that he suspected McClain. Rooney and Brant went to McClain's apartment, where Rooney accused McClain of stealing his money. The two men argued and then began a fight, during which McClain stabbed Rooney. Rooney, bleeding profusely, returned with Brant to Cheek's apartment. Cheek and Brant first tried, without success, to stop the bleeding and then drove Rooney to the hospital for treatment. After Rooney's wounds had been ministered to at the emergency room, Rooney and Brant dropped Cheek off at her apartment and then drove to Rooney's brother's house, where Rooney picked up a shotgun and put it in the back seat of the car. In the meantime, Cheek had gone to McClain's apartment to try to determine what had happened between McClain and Rooney. Brant and Rooney met Cheek as she was returning from McClain's and the three of them then drove back to McClain's apartment, with Brant and Rooney in the front seat and Cheek in back with the shotgun. Brant, testifying for the Commonwealth, stated that during the drive Cheek reported that McClain had said he was not sorry he had stabbed Rooney and that he wished he had killed him. This, according to Brant, enraged Rooney. Cheek denied making any such statement.

Brant also testified that when he, Rooney, and Cheek arrived at the apartment he left Rooney and Cheek in the car, walked to a drug store, called a taxi, and went home. According to Cheek, however, Brant remained at the car after they arrived. She stated that when she realized Rooney intended to harm McClain, she left the car and went to the apartment to warn McClain. She testified that not until the apartment door opened did she see Rooney coming up the stairs with the shotgun. Janet Coviello, who was in the apartment with McClain, testified that she heard a knock on the door and then heard Cheek say, "Ezra, let me in, I have something important to tell you." According to Coviello, Cheek's voice conveyed no sense of urgency. McClain opened the door, and Rooney, followed by Cheek, entered and fired twice at McClain, missing with the first shot and mortally wounding him with the second. During this incident, Coviello reported, she was screaming while Cheek watched silently. After the shooting, Cheek and Rooney left together in Cheek's car.

One factor in determining whether the prosecution had proved that Cheek had the requisite mental state to be convicted of murder was her behavior immediately prior

to the shooting. At trial, therefore, one of the important questions for the jury was whether Cheek had in fact left the car ahead of Rooney in order to warn McClain. If the jury chose to believe Brant's testimony that he left Cheek and Rooney sitting in the car, her story might have appeared less plausible. If, on the other hand, the jury believed her assertion that Brant and Rooney stood talking outside the car while she slipped out from the back seat, they were more likely to credit her version of what followed: that she ran up the stairs ahead of Rooney to warn McClain.

After extensive testimony on direct from Brant, petitioner's counsel asked two or three questions eliciting the answers that Brant knew what had happened between Rooney and McClain, knew of Rooney's anger, yet procured the shotgun. Then counsel asked Brant: "Were you yourself ever charged with anything in connection with this case?" This question prompted the following exchange among the prosecutor, Lobel, the court, and Cheek's counsel, Hutton:

"MR. LOBEL: Objection, your honor.
THE COURT: I will strike it.
MR. HUTTON: My exception please.
THE COURT: Yes."

Cheek's counsel neither pressed his inquiry further by asking additional questions nor explained the basis for the question in order to obtain a more definitive ruling from the court. He asked Brant no further questions on cross-examination.

Petitioner argues that the trial judge's ruling infringed her Sixth Amendment right to confront the witnesses against her by denying her counsel the opportunity to inquire into a possible basis for bias on the part of Brant. In advancing this argument, she relies on *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in which the Supreme Court reaffirmed the constitutional importance of the right to cross-examine prosecution witnesses to reveal sources of bias. *Davis* concerned an attempt to question a witness with respect to his probationary status. The Court stated that the defendant should have been allowed to elicit testimony about this status since the witness's fear of revocation of his probation might have induced him to make a false identification of the defendant. *Id.* at 311, 94 S.Ct. at 1108. Petitioner also points to *United States ex rel. Annunziato v. Manson*, 425 F.Supp. 1272, 1275 (D.Conn.), *aff'd* 566 F.2d 410 (2d Cir. 1977), in which the district court, applying *Davis*, granted habeas corpus because the defendant had been denied his "constitutional right . . . to show bias arising out of a government[al] offer of leniency or immunity." In affirming the ruling of the district court, the Second Circuit stated that when the government, at the time of a witness's testimony, is able to exert leverage against the witness, the defendant is entitled to establish this fact so that the jury may consider it in assessing the witness's credibility. 566 F.2d at 414.

On direct appeal from her conviction, the Massachusetts Supreme Judicial Court held that Cheek was foreclosed from raising her constitutional claim on appeal. While the Commonwealth permits parties to engage in a reasonable cross-examination to show bias, it requires records of criminal convictions to attack credibility by showing prior bad conduct. Here, said the court, it was not clear whether counsel was inquiring into bias or prior bad conduct**, and counsel neither explained his purpose nor pursued the point after the ruling. The court concluded that the judge had made no "unequivocal adverse ruling" subject to review. The court stated that under Massachusetts law, "Where the judge is unable to see the relevance or purpose of a question, the cross-examiner may reasonably be expected

---

** Had counsel anticipated and received a "no" answer to his question whether Brant had been charged, it would have become clear that he was seeking to elicit evidence of bias. It is also plausible, however, that counsel anticipated a "yes" answer to his question. In such event, even though there had been ample testimony as to Brant's conduct such a question might have been asked in order to show that this conduct was regarded by the Commonwealth as worthy of prosecution, and that such "bad conduct" demonstrated the untrustworthiness of his testimony.

to make some explanation as to how he expects to show bias by means of the witness's answer." *Commonwealth v. Cheek, supra,* 374 Mass. at ——, 373 N.E.2d at 1163. To consider on appeal the judge's exclusion of an answer to the question, when he had not been given an explanation of its purpose, said the court, "would defeat 'an important policy which requires parties to give sufficient notice so that the trial judge may reconsider his or her ruling.' *Pires v. Commonwealth,* 373 Mass. 829, —— n. 5, 370 N.E.2d 1365, 1371 (1977)." *Commonwealth v. Cheek, supra,* 374 Mass. at——, 373 N.E.2d at 1163.

On petition for habeas corpus, the district court, citing *Davis v. Alaska, supra,* concluded that although petitioner had violated an established Massachusetts procedural rule by failing to explain her intended line of questioning, the trial judge had nevertheless committed constitutional error in excluding the answer to the question. The court then applied the rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that failure to comply with state procedural rules at trial bars federal habeas corpus review "absent a showing of 'cause' and 'prejudice'", and found that both prongs of the *Sykes* test were satisfied. First, the court said, the importance of Brant's testimony and the possible impeachment value of establishing a factual basis for bias constituted sufficient "prejudice". Second, the court concluded that the reasonableness of counsel's reliance on the trial judge's ability to see the purpose of the question was adequate "cause" for his failure to press the line of inquiry any further or to offer any explanation to the judge.

We have difficulty with the threshold question whether the trial judge committed any constitutional error. In most cases in which a habeas petitioner's procedural default bars federal habeas corpus review, the determination that there has been a denial of a constitutional right is independent of the question of petitioner's compliance with state procedural rules. In this case, however, the question whether there was in fact any error is inextricably entwined with the state's procedural requirements. The Massachusetts Supreme Judicial Court concluded (and we are not free to question) that because counsel never made clear to the trial judge that he was seeking to elicit evidence of bias and because there was a ground on which the judge could properly have sustained the Commonwealth's objection, the trial judge had not definitely precluded this line of questioning. In this regard, the cases relied on by appellant, *Davis v. Alaska, supra,* and *United States ex rel. Annunziato v. Manson, supra,* are distinguishable since defense counsel in those cases had made the purpose of their questions clear, and the trial judges had definitely ruled against allowing questions directed toward showing bias.

■ Appellant asserted at oral argument that a state procedural rule must yield when it conflicts with the right of cross-examination protected by the Sixth Amendment. The right to cross-examine, however, "is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal process." *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). Such limitations on cross-examination have been narrowly circumscribed, since the Court has stated that it will examine closely any competing interest invoked to limit cross-examination in order to protect "[the] integrity of the factfinding process." *Id.* (quoting *Berger v. California,* 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969)). Thus, in *Davis v. Alaska,* the Court concluded that the state's interest in protecting the confidentiality of a juvenile offender's record "cannot require yielding of so vital a right as the effective cross-examination for bias of an adverse witness." 415 U.S. at 320, 94 S.Ct. at 1112.

The district court extrapolated from the holding in *Davis* and concluded that the right of cross-examination should not be limited by "a factor so nebulous as counsel's estimate of the trial judge's understanding." We disagree with this assessment of the Massachusetts court's ruling.

The competing policy at stake here is markedly different from that which the *Davis* Court found subordinate to the right of cross-examination. In *Davis* the trial court had limited cross-examination of the government witness in order to protect him from the embarrassment of having his prior juvenile record exposed. The sole interest served by that ruling was that of the witness. In this case, on the other hand, the Commonwealth's policy of requiring an explanation of an otherwise ambiguous question is central to the truth-seeking function of the trial. Hearsay, evidence of bad character or propensity to commit crimes, and evidence that may unduly prejudice the jury are generally excluded because of their adverse effect on the reliability of the fact-finding process. A judge attuned to guarding against the admission of such evidence may not readily recognize that a particular question that might have been asked for an impermissible purpose was in fact asked in furtherance of a constitutionally protected line of questioning. The Massachusetts rule does not require counsel to "estimate" the judge's understanding; it merely requires that he explain the purpose of a question so that the judge may have no doubt about what he is excluding. This burden is small compared to that which would fall on a trial judge who otherwise risks admitting evidence properly excludable or excluding evidence properly admissible because he must guess the theory underlying counsel's cross-examination.

Nor is the rule applied by the Massachusetts Supreme Judicial Court unique or idiosyncratic. In *United States v. Garcia,* 531 F.2d 1303 (5th Cir. 1976), a federal district judge had sustained an objection to a question of a government agent asking if he knew that the prosecution's major witness, an informant, had been earlier charged with an offense involving 800 pounds of marijuana. The situation was precisely that which developed in the case at bar. The incident would, in the court's view, have probably been admissible to show that "with the possession charge hanging over [the informer's] head like the Sword of Damocles", the informer might

well have been pressured into "making" cases for the government. *Id.* at 1306. But a mere arrest without a conviction would be clearly inadmissible to show general lack of credibility and, while there had been "vague references" to the objective of showing bias, "defense counsel never articulated his theory as to the admissibility of the mere arrest of the witness in such terms as to present the issue which he now propounds on this appeal." *Id.* at 1307. In finding no reversible error, the Fifth Circuit stated: "It is axiomatic that the trial court must be apprised of the purpose of any inquiry to which objection is made. That is, the objective of questions propounded on cross-examination must be revealed to the trial court." *Id.*

We would find it incongruous to hold that the trial judge committed error by prohibiting cross-examination to show bias when neither counsel nor the context in which he asked his question made his purpose clear to the judge. Reversal for denial of the right to show bias on cross-examination thus requires both an affirmative assertion of that right and a knowing decision by the judge to deny or limit it.

*The order of the district court granting appellee's petition for a writ of habeas corpus is reversed.*