COMMONWEALTH vs. JOSE SANTIAGO MARTINEZ.

Hampden.  May 4, 1981. — August 19, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Evidence*, Bias, Cross-examination, Previous testimony of unavailable witness.  *Witness*, Bias, Unavailability.  *Grand Jury*.

The judge at a murder trial erred in refusing to permit defense counsel to cross-examine a material Commonwealth witness concerning his pending appeals from District Court convictions for the expressed purpose of showing the witness's bias.  [379-381]

Discussion of the admissibility of grand jury testimony of witnesses unavailable to testify at trial.  [381-383]

On retrial of a murder case, the admission of grand jury testimony of witnesses unavailable to testify at trial would not be required absent a clear demonstration that the proposed evidence is relevant and unambiguous and that the Commonwealth had a motive to develop the witnesses' grand jury testimony similar to that for which the testimony is offered at the trial.  [383-385]

INDICTMENT found and returned in the Superior Court on November 7, 1974.

The case was tried before *Tisdale, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Robert S. Potters* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

LYNCH, J.  The defendant was convicted on October 20, 1976, of murder in the second degree.  He contends that the trial judge erred by refusing to allow the cross-examination of a Commonwealth witness concerning criminal cases pending against the witness and by refusing to permit the introduction of the grand jury testimony of three unavail-

able witnesses.  He further requests that we exercise our power under G. L. c. 278, § 33E, and grant a new trial.[1] We reverse the judgment.

The death occurred in a boarding house in Springfield, called the Carlton Rooms.  The victim, Edward Premont, was a fifty-seven year old retiree.  When the police arrived on the morning of September 13, 1974, they found Premont's body tied to a chair.  A tie gagged his mouth; a scarf had been used as a blindfold; a pair of pants had been used as a ligature around his neck; a leather belt bound his wrists; an electrical cord was tied around his legs and wrists; a pillow had been placed over his head, and he had been severely beaten.  His death was caused by asphyxiation due to the gag in his mouth and the pants tied around his neck.

Certain crucial events leading up to the murder were witnessed by Justino Santana who lived at the Carlton Rooms next door to the victim.  On the evening of September 12, 1974, Santana saw the defendant and a companion outside the building at 6:30 P.M. and inside the building at 9 P.M. Santana was in Premont's room with two other men when the defendant and the other man appeared in the room.  He had observed the defendant at the Carlton Rooms during the approximately three weeks that the defendant had lived there and was therefore able to recognize him that evening. While in the victim's room, Santana heard the defendant say to his companion in Spanish, "Let's kill him and take his money."  After the defendant and his companion entered the victim's room, Santana left and returned to his own room where he could hear moans coming from the victim's room.  Santana then went back and looked into Premont's room.  He saw the defendant tying and holding the victim while the other man beat him.  Santana, frightened, returned to his own room and locked his door.  He still

---

[1] Although the conviction involved was for murder in the second degree, we review pursuant to G. L. c. 278, § 33E, since the crime occurred before that statute was limited to convictions for murder in the first degree.  See *Commonwealth* v. *Davis*, 380 Mass. 1, 15 (1980).

heard the defendant and the other man in the victim's room and later heard them leave. The next morning the victim was found with no wallet or money in his possession.

The proprietor of the Carlton Rooms, Leo Ryan, testified that he knew the defendant as Martinez had previously rented a room at the Carlton Rooms. On September 12, he observed the defendant in Premont's room along with Santana and several other men. At about 10:30 P.M., he again observed these men in Premont's room, and, when he made his final check shortly after 11 P.M. the door was closed but he heard indistinguishable voices from within. Sometime around 11 A.M. the following morning, Ryan used his key to open the door of the room and upon observing Premont slumped in his chair he immediately closed the door and telephoned the police. Ryan also testified he had posted bail for the defendant who subsequently defaulted.

The defense consisted of an alibi and an attempt to impeach the testimony of Ryan and Santana.

1. The evidence of pending appeals from District Court convictions of the witness Ryan on the issue of his possible bias should have been admitted. After the defense rested, the Commonwealth again called Leo Ryan, this time as a rebuttal witness. Ryan testified that he had seen the defendant fifteen or sixteen times at the Carlton Rooms and that he made bail for the defendant because of a friendly feeling toward him. During a bench conference, the defense counsel indicated that he would like to explore with Ryan the possibility of his having made some kind of arrangement concerning these pending appeals, which influenced Ryan to testify as he had. The defense counsel stated he wished to go into the question of either an existing agreement under which Ryan would receive favorable treatment, or that he testified in the hope of receiving such treatment on the matters under appeal. The judge refused to permit this line of questioning stating that the fact of the pending appeals was inadmissible. The defense did not make any other inquiries of the witness on the issue of bias. In the course of the bench conference, the judge demon-

strated that he understood that defense counsel wished to explore with Ryan the possibility of his having made some kind of arrangement concerning the pending appeals which influenced Ryan to testify as he had. The judge ruled that defense counsel could not inquire into that area because pending appeals were not final convictions.

It was error for the judge to limit the defendant's inquiry on the issue of bias and there must be a new trial. It is a basic rule that reasonable cross-examination for the purpose of showing bias and prejudice is a matter of right. *Commonwealth* v. *Joyce,* 382 Mass. 222 (1981). *Commonwealth* v. *Cheek,* 374 Mass. 613, 615 (1978). *Commonwealth* v. *Ahearn,* 370 Mass. 283, 287 (1976). *Commonwealth* v. *Michel,* 367 Mass. 454, 459 (1975). The record shows clearly that the defense was seeking to inquire into the matter of the pending appeals for the purpose of exploring the possibility that Ryan had a promise or expectation of leniency in those cases as a result of his testimony unfavorable to the defendant.[2] This is not a case where defense counsel did not make clear whether he was inquiring into bias or prior bad conduct. *Commonwealth* v. *Cheek, supra.* Since defense counsel's expressed intent was free of ambiguity, he should not have been restricted in this line of inquiry at the threshold where the witness had testified to material facts. *Commonwealth* v. *Sansone,* 252 Mass. 71, 74-75 (1925). It is true that much is to be left to the discretion of the trial judge in testing bias, *Commonwealth* v. *D'Agostino,* 344 Mass. 276, 280, cert. denied, 371 U.S. 852 (1962); *Commonwealth* v. *Harrison,* 342 Mass. 279, 286 (1959), but it is not within his discretion to prohibit all inquiry into the subject. Nor is it sufficient to rule out the inquiry because to do so reveals an otherwise inadmissible fact. *Commonwealth* v. *Redmond,* 357 Mass. 333, 338 (1970). *Dempsey* v. *Goldstein Bros. Amusement Co.,* 231 Mass. 461, 464-465 (1919).

---

[2] For a discussion of the permissibility of impeaching credibility with evidence of a conviction where the conviction is under appeal see Annot., 16 A.L.R.3d 726 (1967).

Thus, by excluding inquiry into the matter of the witness's bias after having been given sufficient notice that the issue upon which the defense was seeking to inquire was bias and not prior bad conduct, the judge improperly restricted defense counsel's cross-examination of a material witness who placed the defendant in the victim's room on the night of the murder. We do not reach a different result because the attempt to impeach the witness arose on rebuttal. The witness's reiteration of his testimony placing the defendant at the scene on the night of the murder, coming, as it did, toward the end of the trial could only have magnified its original impact on the jury.

2. Since the issue may arise at retrial, we discuss briefly the defendant's argument that it was error to exclude the grand jury testimony of three witnesses who were unavailable to testify at the trial.

It has long been the rule in this Commonwealth in both civil and criminal cases that testimony of a witness at a former trial is competent in any subsequent trial of the same issues between the same parties, provided that the witness meets the test of unavailability and that the former testimony can be substantially reproduced in all material particulars. *Commonwealth* v. *Meech*, 380 Mass. 490, 493-494 (1980). *Commonwealth* v. *Mustone*, 353 Mass. 490, 492 (1968). *Commonwealth* v. *Gallo*, 275 Mass. 320, 328-334 (1931). *Commonwealth* v. *Caruso*, 251 Mass. 362, 366-367 (1925). *McGivern* v. *Steele*, 197 Mass. 164 (1908). The elements necessary to make such hearsay admissible are: the witness's unavailability, opportunity for cross-examination of the witness at the prior hearing by a person against whom the testimony is being offered; the ability to reproduce accurately the former testimony; and the substantial identity of the issues at both trials. Of these elements the opportunity for cross-examination and the identity of the issues raise questions here. We must first decide whether grand jury testimony offered by a defendant is the equivalent of testimony at a trial for the purposes of applying this exception to the hearsay rule. This court has admitted a victim's testi-

mony at a probable cause hearing where the witness had been cross-examined by the defendant at great length. *Commonwealth* v. *Mustone, supra* at 492-494. Although a probable cause hearing is preliminary in nature and in some ways similar to a grand jury hearing, *Mustone* is not clearly on point since in that case not only did the opportunity for cross-examination exist but extensive cross-examination of the witness actually took place. Such cross-examination is, of course, absent in grand jury proceedings. Furthermore, in *Mustone* it was clear that the issues at the probable cause hearing and at the subsequent trial were identical. The defendant argues that the requirement for cross-examination is not necessary where the defendant seeks to take advantage of grand jury testimony since the Commonwealth should be bound by testimony that it offered to obtain an indictment. This court has commented upon the issue of grand jury testimony as coming within the prior recorded testimony exception to the hearsay rule as follows: "The usual formula would not be fulfilled if grand jury testimony were subsequently offered against the indicted defendant, for he would not have had a chance to cross-examine. See *United States* v. *Fiore,* 443 F.2d 112, 115 & n.3 (2d Cir. 1971), cert. denied, 410 U.S. 984 (1973). Nor is it nominally fulfilled where, as here, the defendant offers the testimony against the Commonwealth, for the Commonwealth was not in the position of a cross-examiner at the grand jury hearing; rather it was presenting the testimony through direct examination. However, it has been recommended by commentators, and on occasion held by courts, that a party's having tendered the testimony on direct should serve as the equivalent for the present purpose of his having cross-examined upon it. There is some support for this view as to grand jury testimony on the theory, perhaps, that the government should be considered bound to the trustworthiness of the evidence it chose to present to the grand jury as a basis for an accusation of crime" (footnotes omitted). *Commonwealth* v. *Meech, supra* at 494-495. The proposed Massachusetts Rules of Evidence may support the admissibility of

grand jury testimony of an unavailable witness in these circumstances as an exception to the hearsay rule.[3]  The proposed rule is identical to the Federal rule and is substantially the same as contained in the Uniform Rules of Evidence. See *Commonwealth* v. *DiPietro*, 373 Mass. 369, 384 n.2 (1977), and comments to rule 804 of the proposed Massachusetts Rules of Evidence.

Even if we assume, however, that the current law in Massachusetts is in conformity with the proposed Massachusetts rule and the current Federal practice, the defendant is left with a further problem, for he would then be required to show that the Commonwealth had a motive to develop the witness's testimony at a grand jury hearing similar to that for which it is being offered at the trial.  The Commonwealth argues that the similar motive test requirement is not satisfied because the witnesses testified on direct examination and therefore the former handling of the witnesses was not the equivalent of what now would be done if the opportunity were presented.  If this argument is accepted, a defendant could never avail himself of grand jury testimony under the prior recorded testimony exception to the hearsay rule.  We do not decide here whether or not the law of this Commonwealth permits the introduction of grand jury testimony by a defendant under the prior recorded testimony exception to the hearsay rule, because the testimony which the defendant sought to introduce was ambiguous and inconclusive on the issue whether the witnesses could or could not identify the defendant as being present in the vicinity of the victim's room on the night of the murder.  It should be noted what the unavailable witnesses actually testified to

---

[3] Proposed rule 804 (b), reads, in pertinent part, as follows:  "Hearsay exceptions.  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:  (1) Former testimony.  Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

before the grand jury about the events at the Carlton Rooms on the night of the murder. Ersting Barney testified that he could identify one man as being in the victim's room on the night of the murder. The name of the person the witness placed in the room on the night of the murder is not made clear on the record although apparently it was one Reinaldo Santo. The witness also said there was another man that came into the room whom he did not see clearly.

William Carpenter's grand jury testimony was similarly ambiguous. He said he was in the victim's room drinking from about 2 P.M. until 8 P.M. In the evening he saw someone in the room he could identify by his long, curly hair. He failed to identify two photographs he was shown by the district attorney. The identity of the individual or individuals in these photographs is not to be found anywhere in the record. When asked if he was drinking with the man he identified, he responded, "No. *They* came in in the evening" (emphasis supplied). He further said that about 8:30 or 9 P.M. on the same evening he stood in the victim's doorway briefly and saw in the room with the victim a fellow he could not identify other than that he had long, curly hair.

Angel Martinez told the grand jury that he knew both Reinaldo Santo and Jose Martinez and that on the night of the murder he saw Reinaldo Santo in front of the Coolidge Hotel with a man called Chino but he did not see the defendant. This testimony adds little or nothing on the issue of the defendant's presence at the scene. The other two missing witnesses corroborated the testimony of Santana that two men came into the victim's room; neither of the men was clearly identified on the record although one was apparently Reinaldo Santo and the other was not identified at all.

The Federal decisions involving the admissibility of grand jury testimony against the government under rule 804(b)(1) of the Federal Rules of Evidence seem to assume that the similar motive test is met simply because the testimony was introduced before the grand jury by the government. See *United States* v. *Klauber*, 611 F.2d 512, 516-517 (4th Cir. 1979), cert. denied, 446 U.S. 908 (1980); *United States* v.

*Henry,* 448 F. Supp. 819, 821-822 (D.N.J. 1978). See also *United States* v. *Driscoll,* 445 F. Supp. 864, 867 (D.N.J. 1978). We are not convinced that this is so in every case and seriously question whether the similar motive requirement can rest exclusively on such slender underpinnings. Since the district attorney had positive identification before the grand jury from witnesses Santana and Ryan that the defendant was at the scene, he may have seen very little to be gained by extracting a similar identification from other witnesses. This is especially so when one considers that time is always a limiting factor and that no particular advantage accrues to the Commonwealth in introducing cumulative and repetitive evidence before a grand jury on a given issue. Whatever may be the case, generally, we find this record deficient in establishing that the similar motive test was met, and therefore, if there is an attempt to introduce the same evidence on retrial, its admission would not be required absent a clear demonstration that the proposed evidence is relevant and unambiguous and that the similar motive test is met.

The judgment is reversed, the verdict set aside, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*