**UNITED STATES of America**

**v.**

**Marvin MANDEL et al.**

**Crim. No. HM75-0822.**

United States District Court, D. Maryland.

April 8, 1976.

Jervis S. Finney, U. S. Atty., for the District of Maryland, Barnet D. Skolnik, Ronald S. Liebman and Daniel J. Hurson, Asst. U. S. Attys., Baltimore, Md., for the United States of America.

Arnold M. Weiner, Baltimore, Md., for Marvin Mandel.

William G. Hundley, Washington, D. C., for W. Dale Hess.

Thomas C. Green, Washington, D. C., for Harry W. Rodgers, III.

Michael E. Marr, Baltimore, Md., for William A. Rodgers.

Norman P. Ramsey, Baltimore, Md., for Irvin Kovens.

Joseph A. DePaul, College Park, Md., for Ernest N. Cory, Jr.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

Presently before the Court is a motion filed by defendant Kovens requesting an order requiring the government to furnish prior to trial certain grand jury testimony under the doctrine enunciated in *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government contends that the material requested is not discoverable under *Brady*. The question before the Court is whether the *Brady* doctrine applies to defendant Kovens' request.

On February 5, 1976, defendant Kovens filed a "Motion for an Order Requiring the Government to Furnish Certain Information", together with a legal memorandum in support thereof. Contained in that motion was a broad, generalized request for the production of "exculpatory" material under the *Brady* doctrine. Thereafter, on March 9, 1976, counsel for defendant Kovens, in a letter addressed to government counsel, specifically requested the grand jury testimony of Irving Schwartz, which testimony the defendant Kovens claimed he had reason to believe was exculpatory.

After hearing oral argument on this motion on March 4, 1976, the Court issued an Order dated March 11, 1976 requiring, *inter alia,* that the government file a further written response to defendant Kovens' motion for *Brady* materials. In making this Order, the Court was not aware of the March 9 letter which counsel for defendant Kovens had directed to the government, but reference had been made during the course of argument to the defendant's request for Irving Schwartz's grand jury testimony.

On March 16, 1976, pursuant to the Order dated March 11, the government filed a further written response, stating *inter alia* that:

> having found no even arguably *Brady* information to which counsel for Defendant Kovens does not otherwise have access, the Government hereby avers that it has no material discoverable to counsel for Defendant Kovens under the *Brady* doctrine.

On March 17, 1976, this Court met in conference in chambers with counsel for defendant Kovens and with counsel for the government to discuss the *Brady* request impasse. At that conference, the general contours of the dispute became apparent, and the Court requested counsel to submit legal memoranda on the disputed issue so that the Court could rule on the matter. Both sides have filed memoranda and agreed that the Court should decide on the basis of the arguments made therein without further oral argument.

The government contends that defendant Kovens is not entitled to Schwartz's grand jury testimony prior to trial under the *Brady* doctrine, even if it contains exculpatory material, because counsel for defendant Kovens may otherwise discover such exculpatory information by simply interviewing Schwartz himself. Schwartz is alleged to be "an extremely close friend, business associate, employee and social companion of defendant Kovens". Since counsel for defendant Kovens has access to Schwartz himself, the government argues, any exculpatory information contained in Schwartz's grand jury testimony is not in the "exclusive control" of the government and consequently, the denial of the request to produce the grand jury testimony cannot constitute a "suppression" within the meaning of the *Brady* decision. The government has proffered that Schwartz will be called as a government witness and that his grand jury testimony will be made available to defense counsel during trial under the Jencks Act, 18 U.S.C. § 3500.

Defendant Kovens argues that the plain lanuage of the *Brady* case itself is controlling here, and that there is no indication in that case that discovery hinges on the evi-

dence requested by the defense being in the exclusive control of the government. It is the defendant's position that where the defense makes a pretrial request for specific evidence in the possession of the government, as in *Brady* and as in the present case, that evidence must be furnished to the defense if it contains exculpatory matter. If the government refuses to furnish the material, and such evidence turns out to be exculpatory, then the argument is made that the refusal is a "suppression" within the meaning of *Brady,* and there is a violation of due process. The defendant further urges that the interpretation of *Brady* advanced by the government would require the government to intrude impermissibly into defense preparations in order to determine to whom defense counsel did or did not have "access." Even where a defendant may have theoretical access to a witness, Kovens claims that practical considerations may bar pretrial interviewing of that witness if the witness is represented by counsel and reluctant to cooperate with the defense, particularly where, as is alleged to be the situation here, the witness will be called as a government witness and possibly faces prosecution for perjury in connection with his grand jury testimony.[1] That the government should have the right to determine to whom the defense does and does not have access, for the purpose of triggering the production of *Brady* materials, is thus said to be unworkable as well as impermissible.

Finally, defendant Kovens attacks the government's suggestion that compliance with the Jencks Act will be sufficient to protect his due process rights. In the present case, defendant Kovens argues, where the government plans to call as its own witness someone who conceivably may offer substantial exculpatory testimony, the defense needs that witness' grand jury testimony prior to trial not for the purpose of impeachment, as in the usual Jencks Act situation, but for the purpose of preparing

a defense and using that exculpatory testimony in its own case. Without access to the grand jury testimony prior to trial, the defendant argues that he will be unable to prepare his defense and thereby his right to a fair trial will be violated.

A starting point for the examination of the arguments offered here is the *Brady* decision itself. In that Supreme Court case, the defendant Brady, who had been charged with and convicted of first degree murder, had asked to examine prior to trial the extrajudicial statements of an accomplice who was to be tried in a separate trial. The theory of Brady's defense was that the accomplice was the one who had actually done the killing, and that the jury should consequently return a verdict without capital punishment. The prosecution produced some of the accomplice's statements, but withheld one in which the accomplice admitted that he, rather than Brady, had committed the homicide. The Supreme Court held,

> [W]e now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218. In *Moore v. Illinois,* 408 U.S. 786, 794–795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706, 713, the Supreme Court reiterated the above language and noted,

> The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence.

---

1. In a letter dated April 6, 1976, directed to the Court by counsel for defendant Kovens, it is proffered that counsel for Mr. Schwartz has denied access to Mr. Schwartz for interviews by defendant Kovens or his counsel. It must be assumed for the purpose of this opinion that defendant Kovens does not have access to Mr. Schwartz.

The defendant contends that the language of the case plainly requires the government to turn over, upon request, any evidence favorable to an accused, without regard to whether that evidence is in the exclusive control of the government. The validity of the defendant's argument turns on the interpretation of the word "suppression". If by "suppression", the Court merely means "refusal to supply upon request", then the defendant's argument is correct. But if, as the government contends, the word "suppression" implies that there is a violation of due process only where the favorable evidence requested is so in the exclusive control of the government that a refusal to supply the favorable requested evidence would result in the defendant's inability to discover the favorable evidence through his own reasonable and diligent efforts, then the defendant's argument must fail.

A number of cases decided after *Brady* deal with the duty of defense counsel to make reasonable and diligent efforts to discover favorable information that is not in the exclusive control of the government. Those cases have indicated that there is no violation of due process where the government failed to produce favorable evidence in its possession, where there was no pretrial request for the information and where defense counsel had access to the favorable information. *See, e. g., United States v. Brawer,* 367 F.Supp. 156 (S.D.N.Y.1973); *United States v. Kapatos,* 276 F.Supp. 43 (S.D.N.Y.1967); and other cases cited in 34 A.L.R.3d 16, 79–91 (1970). The general rule formulated in those cases is that a

prerequisite to relief for nondisclosure of required information is that the defense did not have independent knowledge of and access to the evidence in question at the time of trial.

*Smith v. United States,* 375 F.Supp. 1244, 1247 (E.D.Va.1974), citing *Rosenberg v. United States,* 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1958) and *Thomas v. United States,* 343 F.2d 49 (9th Cir. 1965).

The defendant seeks to distinguish these cases for the reason that they involve post-conviction challenges brought on grounds of suppression of evidence where no pretrial request for the production of specific evidence was made, and thus do not come within the narrow factual circumstances addressed in the *Brady* case itself. In support of this argument, the defendant relies on the analysis of suppression-of-evidence cases offered by Judge Friendly in *United States v. Keogh,* 391 F.2d 138 (2nd Cir. 1968). In that case, Judge Friendly distinguished three types of suppression-of-evidence cases: (1) deliberate bad faith suppression for the very purpose of obstructing the defense ("bad faith suppression"); (2) suppression of favorable evidence in face of pretrial request for production ("request" cases or "pure *Brady*" cases); and (3) negligent suppression of evidence where no request was made but where hindsight indicates that the defense could have put the nondisclosed evidence to "not insignificant use" ("negligent suppression"). 391 F.2d 146–147. Defendant Kovens argues that all of the post-*Brady* cases cited above fall in the "negligent suppression" category, and thus cannot be authority for cases falling within the second category, as does the instant case.

The mere fact that "request cases" and "negligent suppression cases" may be distinguishable for some circumstances hardly compels the conclusion that they are distinguishable for all purposes. All that Judge Friendly was attempting to do in *Keogh* was to analyze the suppression of evidence cases for the purpose of determining an appropriate burden of proof in postconviction challenges brought on these due process grounds. The question before him was to determine what kind of showing of harm a petitioner needed to make to obtain postconviction relief. The Court held that the level of the materiality of the evidence allegedly suppressed which must be demonstrated to reverse a conviction would vary depending on which category of suppression cases it involved. In "deliberate suppression" cases, for example, a petitioner need show only a "fairly low showing of materiality", because such occasions would presumably be infrequent and easy reversals in

such cases would serve the purpose of deterring improper prosecutorial conduct. In "negligent suppression" cases, on the other hand, a petitioner would have to make a high showing of materiality to obtain relief, since such situations arise in every prosecution and the prosecutors were given no notice by the defense that particular information in their possession would be favorable to the defense. As to the second category of "request cases", Judge Friendly noted:

> The request cases (category two above) also stand on a special footing; the prosecution knows of the defense's interest and, if it has failed to honor this even in good faith, it has only itself to blame.

391 F.2d at 148. Consequently, a petitioner would need to make only a relatively low showing of materiality to overturn a conviction in "request" cases.

The analysis in *Keogh*, however, has nothing to do with the central argument of defendant Kovens in this case, that "suppression" as used in *Brady* means a mere refusal to furnish the defense with favorable information in the government's non-exclusive possession. *Keogh* is completely consistent with the view that the prosecution determines whether or not the evidence is favorable at its peril, and that even an erroneous good faith determination may result in a reversal of a conviction. It is simply silent as to the question of whether the evidence requested must be in the exclusive control of the government, and Judge Friendly's category of "request" or "pure *Brady*" cases cannot be construed, as the defendant has suggested, as one in which there is a violation of due process where there is a "deliberate refusal to honor a request for evidence where the evidence" is favorable.

The government has cited a number of cases which do involve pretrial requests for evidence not within the exclusive control of the government. In each of those cases, the request has been denied on the ground that there has been no "suppression" within the meaning of *Brady*. *United States v. Natale*, 526 F.2d 1160 (2nd Cir. 1975); *United States v. Ruggiero*, 472 F.2d 599 (2d Cir.)

*cert. denied*, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973), and *United States v. Gleason*, 265 F.Supp. 880 (S.D.N.Y.1967) (Frankel, J.).

In *Gleason, supra*, defendant moved for pretrial disclosure of all exculpatory evidence in the possession of the government. In denying the motion, Judge Frankel noted:

> The sentence defendant invokes from *Brady* concerns the 'suppression * * * of evidence.' 'Suppression' denotes control and exclusive possession. *Cf. Giles v. State of Maryland*, 386 U.S. 66, 96, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) (Mr. Justice Fortas [sic] concurring) [footnote omitted]. Thus, there is no reason to suppose that the Supreme Court, dealing with facts that actually presented such elements, meant to announce a revolutionary doctrine requiring the prosecution to prepare the case for the defense. To take an example close to the concrete circumstances of the instant case, where the prosecutor interviews witnesses known to both sides, there is no general requirement—certainly none 'upon request' in advance of trial—that he deliver or report to defendants statements the defense would or might find helpful.

265 F.Supp. 880, 884. In a footnote, Judge Frankel sets out the cited portion of *Giles* containing Mr. Justice White's statement in his concurring opinion that

> In the end, any allegation of suppression boils down to an assessment of what the State knows at trial in comparison to the knowledge held by the defense.

386 U.S. at 96, 87 S.Ct. at 808, 17 L.Ed.2d at 757, cited at 265 F.Supp. at 884, note 1.

The defendant in *Gleason* had also made a specific request for any exculpatory statements in the possession of the government made by one of the defendant's employees who was expected to be a witness for the defense. As to that request, the Court noted:

> It may be observed, however, that we would not order production of such statements at this time in any event. It is perfectly clear that [the defendant]

knows this prospective witness, is close to her, and has friendly access to her. It stretches the notion of 'suppression' beyond recognition to say that the Government may not retain in its private files the records of interviews with such potential witnesses.

265 F.Supp. at 887.

In *Ruggiero, supra,* the defendant requested production of exculpatory information in the possession of the government, including any exculpatory grand jury testimony of three named individuals. The district court, after review of the minutes, denied the motion. As to one of the named individuals, the Second Circuit noted that the defendant

> does not and could not seriously argue that the court's refusal to permit the inspection of the grand jury minutes of Albano, a close associate of Ruggiero, constituted 'suppression' within the meaning of *Brady.*

472 F.2d at 603 n. 3. As to the testimony of the other individuals, the Second Circuit, quoting Justice White's formulation of "suppression" in *Giles* cited above, held that there was no suppression and affirmed the district court's denial of the motion. First, the Second Circuit noted that the government had produced the requested minutes for an *in camera* inspection and ruling, and concluded that such conduct could hardly be classified as suppression. 472 F.2d at 604. Second, the Court noted:

> The purpose of the *Brady* rule is not to provide a defendant with a complete disclosure of all evidence in the government's file which might conceivably assist him in the preparation of his defense, but to assure that he will not be denied access to exculpatory evidence known to the government but unknown to him. Here the appellant was on notice of the essential facts required to enable him to take advantage of such exculpatory testimony as Lundy and Sheridan might furnish.

472 F.2d at 604. The Court noted that the defendant could have subpoenaed Lundy to testify at trial if he had so desired. The defendant also had argued that he had been unable to interview Lundy prior to trial. The Court, noting that this argument was being raised for the first time on the appellate level and that the defendant had failed to advise the trial court of his inability to interview Lundy, held that "under the circumstances" the trial court did not abuse its discretion in denying the disclosure of Lundy's grand jury testimony. 472 F.2d 605.

The rule announced in *Ruggiero* was recently reaffirmed in *Natale, supra.* As in *Ruggiero,* the appellant in *Natale* claimed that the district court erred in refusing to require the government to furnish grand jury testimony of a witness prior to his being called as a defense witness. The Court, citing *Giles* and *Ruggiero,* said

> The concept of 'suppression' implies that the Government has information in its possession of which the defendant lacks knowledge and which the defendant would benefit from knowing. * * * Here, as in [*Ruggiero*], this essential prerequisite to invocation of the *Brady* rule is lacking.

526 F.2d 1170–1171.

The defendant characterizes these cases as erroneously relying on Justice White's comment in *Giles,* cited above. Defendant Kovens argues that the context of the words as they appear in the *Giles* case simply has nothing to do with the *Brady* situation in which there is a specific pretrial request for information in the government's possession. But it is in fact clear that Justice White's concurring opinion *was* addressed to a *Brady* situation. The state trial court had ordered a new trial on *Brady* grounds, despite the lack of a pretrial request for disclosure of the evidence suppressed. 386 U.S. at 73, 87 S.Ct. at 796–97, 17 L.Ed.2d at 744. The Maryland Court of Appeals addressed the suppression of evidence question. 386 U.S. at 83–84, 87 S.Ct. at 801–02, 17 L.Ed.2d at 749–50. While the plurality of the Court did not see fit to reach the suppression issue, Justice White explicitly joined in the result of the decision for the reason that he was "not at all sure that there has been a full airing of the suppression issue". 386 U.S. 84, 87 S.Ct. at

802, 17 L.Ed.2d at 750. One question that he felt the Maryland Court should resolve was whether the prosecution was charged with the knowledge of certain other officials. 386 U.S. at 96, 87 S.Ct. at 808, 17 L.Ed.2d at 757. Immediately after expressing this concern, Justice White made the comment cited in the cases above. The Court is not persuaded by the defendant's argument that the cases cited above have erroneously relied on an inappropriate authority in citing Justice White's comment.

■ In any event, the Court is of the opinion that the analysis in the cases cited by the government is correct and proper. The application of the interpretation of "suppression" suggested by the defendant to "request" cases would, if adopted, transform the *Brady* rule into a powerful tool of discovery that would completely overshadow the discovery rules found in the Federal Rules of Criminal Procedure. It is difficult to believe that the Court intended to revolutionize criminal discovery procedures without explicitly so stating. Finally, it strains the common sense meaning of the word "suppression" to say that suppression exists where the government refuses to produce evidence which the defendant might discover through his own reasonable efforts.

■ A different situation, left open by the decisions in *Ruggiero* and *Natale*, might exist where the defendant is unable to obtain access to the information requested despite the fact that it is not within the exclusive control of the government. If the defendant's lack of access is a result of some governmental action, it is conceivable that the government's action could constitute "suppression". But where the defendant's inability to obtain access to favorable evidence is not a consequence of any governmental action, there is no "suppression" within the meaning of the *Brady* doctrine. In the instant case, if the defendant's inability to interview witnesses who were called before the grand jury prior to trial is due, not to governmental action, but to the witness' own free choice, there can be no suppression. *Cf. United States ex rel. Tat-*

*man v. Anderson*, 391 F.Supp. 68 (D.Del. 1975) (failure of government to grant immunity to witness who allegedly would have exculpated defendant, but who refused to testify on Fifth Amendment grounds, does not constitute suppression within *Brady* doctrine). There has been no allegation here that the defendant's access to Schwartz has been limited by any governmental action. The mere fact that it may not be in Schwartz's own interest to discuss his grand jury testimony with the defendant if he faces criminal prosecution for perjury does not require the government to act so as to make it in Schwartz's interest to talk with the defendant.

Finally, the Court notes that this is not a case in which the defendant will not have at trial the grand jury testimony that he desires, although it may be provided somewhat later than he would like to have it. The government has indicated that Schwartz will be called as a government witness and that his grand jury testimony will be made available under Jencks. Under these circumstances, the Court cannot say that the due process rights of the defendant have been violated.

For all of the reasons discussed above, the Court concludes that the government need not turn over Schwartz's grand jury testimony to the defendant under *Brady*.

For the reasons stated above, it is this 8th day of April, 1976, by the United States District Court for the District of Maryland, hereby

*ORDERED*:

That defendant Kovens' Motion for Order Requiring the Government to Furnish Certain Information be, and the same hereby is, *Denied*.