**UNITED STATES of America**

v.

**C. Norman DRISCOLL et al.**

**Crim. No. 77–442 (VPB).**

United States District Court,
D. New Jersey.

Feb. 9, 1978.

See also, D.C., 445 F.Supp. 868.

Robert J. Del Tufo, U. S. Atty. by Edwin R. Matthews, Asst. U. S. Atty., Newark, N. J., for the United States.

William A. Carpenter, Jr., Newark, N. J., for defendant Driscoll.

S. M. Chris Franzblau, Newark, N. J., for defendant Hatch.

David A. Ruhnke, Federal Public Defender, Newark, N. J., for defendant Skubina.

## OPINION

BIUNNO, District Judge.

In this criminal case, the Grand Jury heard testimony of Mr. Tecott in the course of its investigation. Before the indictment was returned, Mr. Tecott died. The indictment names three individuals as defendants, and charges them with conspiring with each other and with Mr. Tecott. Of course, Tecott could not be indicted as a defendant to be tried because he had meanwhile died.

The three named defendants have moved for access to a copy of Mr. Tecott's testimony before the Grand Jury. The court di-

rected the United States to furnish a copy of that transcript for inspection in camera, under seal.

■ If Tecott's testimony contains *Brady* material, it must be provided under the standard discovery order routinely entered in this District at arraignment as a tool for meeting the ever decreasing time scales of the Speedy Trial Act.

Aside from that, there is a further question whether defendants are entitled to the Tecott Grand Jury testimony as a means of achieving the right to the compulsory process of this court under *U.S.Const., Amend. 6.*

■ There can be no doubt that, were Tecott alive, any of the defendants would be entitled to have him testify as a witness and, were he unwilling to do so, to have the benefit of the compulsory process of the Court, by subpoena under F.R.Crim.P. 17, to have him appear and testify at trial.

■ This undoubted right cannot be exercised *de jure* because Tecott has died. However, having testified before the Grand Jury that returned the indictment, Tecott is a "declarant", as defined by Fed.Ev.Rule 801(b), he is unable to be present or to testify at the hearing because of his death, and so is "unavailable", as defined by Fed. Ev.Rule 804(a)(4).

■ For these reasons, his former testimony before the Grand Jury becomes potentially admissible evidence, as an exception to the hearsay rule, under Fed.Ev.Rule 804(b)(1).

■ Whether the testimony can be received at trial is a decision that must await trial; no advisory opinion on that score is within this court's jurisdiction. However, the potential is there.

The Grand Jury testimony of Tecott is "testimony given as a witness at another hearing of the same . . . proceeding". And the United States is a "party against whom the testimony is now offered", and "had an opportunity and similar motive to develop the testimony by direct . . .

examination," thus satisfying, evidently, the conditions of Fed.Ev.Rule 804(b)(1).

■ The United States has furnished the Tecott testimony to the court for in camera inspection. From that inspection the court is wholly unable to come to any conclusion on the question whether the Tecott testimony tends to inculpate or exculpate the defendants on trial. It is a fragment of factual background which, by itself, and read in the light of the charges in the indictment, is ambiguous at best. Some segments may tend to inculpate the defendants on trial, and others may tend to exculpate Tecott. The court cannot say that it is *Brady* material in this case.

Despite this, it is clear that if defendants are to enjoy their 6th Amendment right to compulsory process they should have the opportunity to offer the Tecott testimony as a *de facto* substitute for Tecott himself. Technically, the defendants ought to be in the same position they would be if Tecott were alive and declined to be interviewed or to testify. In that case, a professional decision would need to be made whether to have a subpoena issued to him. Under those conditions, defense counsel would not know what his testimony would be until he were on the stand and had questions put to him. Thus, one choice is to rule that they may have the opportunity to offer the Tecott testimony at trial, sight unseen, and be bound by its content.

■ Another choice would be to provide defendants, before trial, with a copy of the questions asked, but not with the answers. This would provide some opportunity to evaluate the scope of the transcript, and to select those questions which they wish to ask, in which case the answer would be put in evidence (unless some objection to the question be sustained). This would put the defendants in the same position they would be in if Tecott were alive, were unwilling to be interviewed in advance, were subpoenaed, sworn and asked the questions selected, one by one.

The third choice would be to provide a copy of the Tecott testimony in full at that point when the United States rests. There is usually a set of motions made at that point, which would allow time to read and evaluate the transcript in the context of the evidence adduced by the United States on its direct case, and which may include proofs, through other witnesses and exhibits, of Tecott's role (if any) in the transactions underlying the indictment.

Of these choices, the second one appears most likely to satisfy the competing interests in a balanced way, while providing defendants with the closest substitute for a subpoenaed Tecott. An order to that end will be entered.

Several other facets are obviously involved and the attention of counsel called to them. These are enumerated as follows:

1. If any part of the Tecott testimony is introduced, it should be done by reading the questions and answers to the jury, rather than by allowing the transcript to enter the jury room as an exhibit. Tecott's unavailability makes it impossible for the jury to observe his demeanor, on the one hand, and allowing the transcript to go in to the jury room could give the written word more weight or impact (but without the benefit of demeanor observation) than would be the case if he testified before the jury. A plain reading of questions and answers received, which would be done by the court, strikes the most neutral balance between these factors.

2. The court sees no way in which the United States can offer Tecott's testimony as part of its direct case. It does not meet the conditions of the only conceivable rule, Fed.Ev.Rule 801(d)(1), mainly because if offered by the United States the defendants would be deprived of the right of confrontation.

3. If any part of the Tecott testimony is offered and received, as part of the defense case, it may be that the United States would be entitled to require that other parts be offered as well, under Fed. Ev.Rule 106.

4. Since one or another part of the Tecott testimony may tend to exculpate himself, or otherwise may raise a doubt on some part of the evidence for the United States, Tecott's credibility may be open to attack (and if attacked, to support), under Fed.Ev.Rule 806.

5. During the argument of various motions in this case, there has been reference to the fact that one or two civil lawsuits have been pending in the Superior Court of New Jersey, in the course of which depositions of Tecott may have been taken. This opinion expresses no view on the question whether any of the Tecott deposition testimony may be offered by any party. The ruling here is confined to the question of access to Tecott's testimony at the Grand Jury stage of this proceeding.

Finally, it should be observed that the court has found no authority to indicate, one way or the other, whether the Grand Jury testimony of a deceased witness before that body (which named the deceased witness as an unindicted co-conspirator) is within the scope of the meaning of the expression: "Testimony given as a witness at another hearing of the same or a different proceeding . . .", Fed.Ev.Rule 804(b)(1).

Neither the Advisory Committee Notes, nor the House Report (No. 93–650), nor the Senate Report (No. 93–1277), nor the Conference Report (No. 93–1597) to what became P.L. 93–595, addresses this question. Certainly, the expression embraces testimony at a prior trial. Certainly, it embraces depositions taken in criminal cases, see F.R.Crim.P. 15, and 18 U.S.C. § 3503. Whether or not the expression embraces testimony before a Grand Jury during the investigation stage eventually leading to indictment is by no means clear.

Despite this doubt, the court has arrived at its conclusion largely to assure that the defendants' constitutional right to the compulsory process of the court be realized to

the extent it can be in the circumstances of this case.