**UNITED STATES of America, Appellee,**

v.

**Gerald N. KLAUBER, Appellant.**

**No. 78–5169.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 14, 1979.

Decided Nov. 29, 1979.

Michael E. Marr, Baltimore, Md. (Joseph L. Evans, Baltimore, Md., on brief), for appellant.

Herbert Better, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., and Joshua R. Treem, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Gerald N. Klauber was indicted on 26 counts under the mail fraud statute, 18 U.S.C. § 1341, and one count of racketeering under 18 U.S.C. § 1962.[1] Ten of the mail fraud counts were nolle prossed prior to trial. The jury found Klauber guilty on the sixteen remaining mail fraud counts and on the racketeering count.

The scheme or artifice to defraud and the pattern of racketeering activity asserted against Klauber grew out of his conduct as a partner in the law firm of Fine and Klauber, P.A. The evidence at trial permitted a jury conclusion that Klauber was engaged in a practice in which, with respect to personal injury cases in which he or his firm represented plaintiffs, Klauber sought inflated statements from doctors in which charges were set forth for visits by the plaintiffs which had not actually occurred. Subsequent to settlements with insurance companies based on such inflated statements from doctors, Klauber reduced the amounts actually remitted to the doctors and sometimes diverted amounts received in settlement with respect to one plaintiff's case to a doctor not involved in the case but retained with respect to some other plaintiff.

Klauber principally appeals because the government refused to grant immunity for a witness, Michael Simons, whom Klauber asserted he wished to call on his behalf. Klauber did not actually call Simons to the stand, advancing as his reason the perceived futility, inasmuch as Simons' attorney had stated he would assert the constitutional privilege against self-incrimination as to every substantive question asked, unless Simons were granted use immunity for his trial testimony.

Simons was a former associate in the firm of Fine and Klauber, P.A. He had testified before the Grand Jury investigating the activities of doctors and lawyers in the Baltimore metropolitan area, the Grand Jury which indicted Klauber. Simons' tes-

---

1. There was a co-defendant, Howard Fine. However, pursuant to a severance, Klauber, was tried alone.

timony before the Grand Jury had been pursuant to a grant of use immunity. *See* 18 U.S.C. § 6001 *et seq.* Klauber asked the district judge who presided at the trial to require that the government grant use immunity to Simons to testify in Klauber's defense. The request was denied.

Klauber's proffer of what Simons' testimony would have been, had he been granted immunity, was:

1. Simons would have denied having had a conversation with Powell, another former associate of Fine and Klauber, as to which Powell, under informal or "letter" immunity,[2] had testified as part of the government's case. Powell's testimony had referred to statements by Simons to him relative to destruction of law firm files in circumstances indicative of guilty motivation.

2. Simons would state that file destruction by the law firm was a normal matter carried out in the ordinary course of business and that he had not wilfully destroyed settlement sheets.

3. Simons would testify that clerks at Fine and Klauber inadvertently destroyed files that the firm intended to retain, and that Klauber had no connection with the destruction of files.

4. Simons would contradict testimony of another witness for the government, Dr. Sobkov, to the effect that Sobkov had discussed with Simons inflated medical bills and back-dated medical reports. The Sobkov testimony to which the proffer was directed had been elicited not by the government but by the defendant himself on cross-examination of Sobkov.

Since Klauber did not call Simons to the stand, the contention that he would have asserted his Fifth Amendment right and refused to testify without a grant of immunity from the government is not established as we believe it normally would be required to be for the question Klauber raises to be preserved.[3] However, Klauber's counsel did establish in the record that he had spoken to counsel for Simons and received a flat statement that Simons would not testify as to any aspect of the matter without a grant of immunity covering any topic on which he might be called to give answers. The action of the government at the trial indicated that it accepted the fact that Simons would not testify absent a grant of immunity. We shall, therefore, proceed on the assumption that the point had been properly preserved. However, for future guidance of trial judges and of counsel we point out:

A. Statements of intention are not the same as the actual thing in such circumstances. A witness could well be reluctant to testify and looking for a way to avoid going on the stand, although, especially when he is a member of the Bar, prepared to do his duty in court if actually put on the stand. Such a witness might well state in advance that he would not testify and would invoke the Fifth Amendment in the hopes that he thereby would not be called. Yet, if he were, in fact, summoned and put under oath, he might, indeed, testify.[4]

B. The right to invoke the Fifth Amendment as to any question put is not absolute. The trial judge in appropriate cases may determine that a foundation for invocation of the Fifth Amendment does not exist. *Zicarelli v. New Jersey Investigation Comm'n,* 406 U.S. 472, 478 n.12, 480–81, 92 S.Ct. 1670, 33 L.Ed.2d 234 (1972); *Hoffman v. United States,* 341 U.S. 479,

---

2. *See United States v. Librach,* 536 F.2d 1228, 1230 (8th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). For the purposes of discussion, we assume that such "letter" immunity was equivalent to use immunity. In another case directly presenting the issue of whether they are identical, we do not foreclose ourselves from questioning that assumption. *See* Note, *The Sixth Amendment Right to Have Use Immunity Granted to Defense Witnesses,* 91 Harv.L.Rev. 1266, 1268 n.15 (1978).

3. *Cf. United States v. Wright,* 588 F.2d 31, 35–7 (2d Cir. 1978), *cert. denied,* 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 467 (1979).

4. It is of passing interest that Paul Gibbons, a Fine and Klauber associate, had to be given use immunity to secure his testimony before the Grand Jury. However, when called as a defense witness by Klauber, he testified without invoking the Fifth Amendment privilege.

486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *cf. Richardson v. State*, 285 Md. 261, 265, 401 A.2d 1021, 1023–4 (1979).

We cannot, of course, speculate on what might have happened in either of these two areas had Simons, in fact, been put on the witness stand. However, we cannot say that the testimony proffered by Klauber's counsel would inherently have tended to incriminate Simons.

When we turn to Klauber's assertion of a supposed duty of the government at trial to grant immunity to Simons or of a responsibility of the district judge to invoke sanctions for a refusal of the government to grant immunity, it is important at the outset to highlight the inadequate foundation which exists for the argument. Although Klauber's counsel, by his proffer of what Simons' testimony at trial would be, indicated a detailed knowledge of what Simons stated before the Grand Jury,[5] there is nothing in the record to show what Simons' testimony before the Grand Jury actually was. Klauber's counsel did not at the time of trial demand production of Simons' Grand Jury testimony, because, he said at oral argument, he knew the government would not call Simons, so that the Jencks Act, 18 U.S.C. § 3500, would not apply.[6]

The Jencks Act requires that, where a witness called by the United States has testified on direct, the court, on defendant's motion, shall order the United States to produce any statement (specifically including a statement made by the witness to a grand jury) of the witness in the possession of the United States which relates to the subject matter of the direct testimony of the witness. Perhaps Klauber's counsel felt foreclosed by the language of 18 U.S.C. § 3500(a):

In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

■ However, the prohibition on obtaining the Grand Jury statement contained in that statute is clearly inapplicable in this case since the very fact that the government did not intend to call Simons lifts the Simons Grand Jury testimony out of the definition of the statements as to which the prohibition in 18 U.S.C. § 3500(a) applies. Hence, if an independent basis for obtaining Simons' Grand Jury testimony existed, 18 U.S.C. § 3500(a) was no bar. Whether it would be a bar up until the time when the witness had actually testified at trial if the government had proposed to call Simons as a witness, but the Grand Jury testimony of Simons contained material exculpatory of Klauber, is a question we are not here called upon to address.

Klauber's argument that he was entitled to Simons' testimony at trial, through immunization, has implicit in it the assumption that the testimony would be "material to guilt". If so, the Grand Jury testimony of Simons may have been available to Klauber's counsel under the holding in *Brady v. Maryland* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963):

We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

---

**5.** Klauber's counsel stated at argument that his proffer covered any matter testified to before the Grand Jury which he would hope to elicit from Simons were he available at the trial.

**6.** Klauber had sought prior to trial to adopt a motion under Fed.R.Crim.P. 16(a) by his co-defendant Fine broadly addressed to any exculpatory material contained in the Grand Jury minutes, including material in Grand Jury testimo-

ny of associates of Fine and Klauber, P.A. The motion by Fine, and Klauber's adopting motion were denied on the basis that following a review of the Grand Jury minutes the district judge was satisfied that the government had sufficiently complied with its responsibility to supply exculpatory material. Klauber has not asserted on this appeal that the denial was erroneous.

**516**

*See United States v. Driscoll*, 445 F.Supp. 864, 866 (D.N.J.1978); *but see United States v. Mandel*, 415 F.Supp. 1079 (D.Md. 1976) (distinguishable since the Grand Jury testimony sought in that case was of a witness whom the government intended to call at trial, whereupon the Jencks Act would have caused the testimony to be made available to the defense).

We speak tentatively to this point, since Klauber's counsel did not at trial demand production of the Grand Jury testimony of Simons, nor assert on appeal that it was error to refuse to make such testimony available to him prior to trial. However, an absence of such actions does reduce the basis for a claim that the district judge should have addressed the request for immunization of Simons at all. It is not impossible that the trial judge, upon the making of a *Brady* demand for Simons' testimony, would have inspected the Grand Jury minutes, would have determined that, with or without editing to eliminate irrelevant, prejudicial or inadmissible matter, the testimony was material to guilt, would have made a transcript of the testimony available to defendant's counsel, and would have admitted it into evidence upon tender by the defendant.[7] A determination by the trial judge that the testimony was not material to guilt, which, in light of his actions before trial, would appear to have been indicated, would have undercut any contention that Klauber was entitled to extraordinary measures to secure Simons as a witness at trial.

Again speaking tentatively since we are in the area of speculation,[8] we would anticipate that the district judge would not have been concerned that such use of Simons' Grand Jury testimony, had he found it material to guilt, would have presented the threat to his Fifth Amendment right which his testifying at trial, without a further grant of immunity, would have created. *See United States v. Housand*, 550 F.2d 818, 821–24 (2d Cir.), *cert. denied*, 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977). The introduction of the Grand Jury testimony would involve no volitional act by the witness, Simons; only the Grand Jury testimony would exist after such use, even though it had undergone another transcription in the course of the trial, and the grant of immunity as to its use against Simons would continue unimpaired.

Furthermore the inadmissibility of the Grand Jury testimony, even though hearsay, was by no means a foregone conclusion. It would have been sworn testimony which could only be used against Simons, if false, in connection with a perjury prosecution. *United States v. Housand, supra.* So his motivation for being truthful would have been strong. The fact that it would not, standing as the Grand Jury transcript alone, be subject to cross-examination is of little weight. The defendant, who would be seeking to introduce it, was the one precluded from questioning the witness at the Grand Jury, not the government. The government had a full right to interrogate at the Grand Jury proceedings. If the government, at trial, should wish to contradict the testimony in the Grand Jury transcript out of the witness' own mouth, it would have the right, once the Grand Jury testimony was admitted, to call Simons to the stand and immunize him for the purposes of the cross-examination. We can well imagine that the district judge might have admitted the Grand Jury testimony under Rule 804(b)(1) of the Federal Rules of Evidence as testimony by an unavailable

---

7. The secrecy attendant upon Grand Jury proceedings would have been no insuperable barrier to Klauber's quest for Simons' testimony before the Grand Jury, *see* Fed.R.Crim.Proc. 6(e)(2)(C)(i); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *cf. Douglas Oil Co. of Calif. v. Petrol Stop Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). We cannot say, in the abstract, that the district judge, if a request had been made, would not have concluded that there was a particularized need.

8. But, we hope, not of *obiter dictum*, since we do not express a view as to what the rulings of the district judge should have been. We merely allude to the points to emphasize that the raising of them was a necessary preliminary to a contention that Simons should have been immunized at trial.

declarant at another hearing in the same proceeding, at which the government, as the party against whom the testimony would be offered, would have had an opportunity and similar motive to develop the testimony by direct examination. *See United States v. Henry*, 448 F.Supp. 819, 821 (D.N.J.1978); *United States v. Driscoll*, 445 F.Supp. 864, 866 (D.N.J.1978). Nor can we, in the abstract, conclude that the Grand Jury testimony could not have satisfied the criteria of the general hearsay exception found in Rules 803(24) and 804(b)(5) of the Federal Rules of Evidence.[9]

Hence, it is highly questionable whether the immunization issue which Klauber seeks to assert is properly before us at all. *Cf. United States v. Gregorio*, 497 F.2d 1253, 1264 (4th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974). Simons' testimony may well have been available by another, less radical route which Klauber's counsel failed to explore. If an alternative method for achieving the desired result was available, but not resorted to, the tangled area which the defendant would have us enter should be avoided. Nevertheless, a word or two on the subject may be appropriate.

■ First, it is to be emphasized that there was no power in the district judge to confer immunity himself. *United States v. Housand*, 550 F.2d 818, 824 (2d Cir.), *cert. denied*, 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977); *Thompson v. Garrison*, 516 F.2d 986, 988 (4th Cir.), *cert. denied*, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975). At most, he could impose sanctions for a failure by the government to respond affirmatively to a request that the witness be immunized.[10] The two cases which have come to our attention in which it was indicated that the court would impose sanctions if a witness were not immunized involved unfair conduct by the government, a factor totally absent in Klauber's case. In *United States v. Morrison*, 535 F.2d 223 (3d Cir.), *cert. denied*, 429 U.S. 824, 97 S.Ct. 24, 50 L.Ed.2d 1 (1976), a witness whom the defendant proposed to call and who was willing to testify was coerced into pleading the Fifth Amendment by government threats of prosecution if she were to testify. The government previously had evinced no interest in prosecuting the witness, and clearly was misusing its powers to obtain an improper result extremely harmful to the defendant and invasive of his Sixth Amendment right to compulsory process for obtaining witnesses in his favor. The court in *Morrison* was not identifying a general right of a criminal defendant to witness immunization in order to secure favorable testimony.[11] Indeed, it is to be doubted that it was suggesting a specific right in that case. Instead, the court was confronted with fundamentally unfair action by the government which made it incumbent to hold that the charges against the defendant

**9.** *But see United States v. DePalma*, 476 F.Supp. 775, 776 n.4 (S.D.N.Y.1979).

**10.** There exist musings about the possibility of an innate power in the courts to immunize witnesses directly themselves in extraordinary situations, where attaining of justice is not otherwise possible. *See United States v. Herman*, 589 F.2d 1191, 1204 (3d Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). The infinity of future possibilities which today are not perceptible to us renders inappropriate an unnecessary decision that such a power in the courts, violative as its existence would be of long-held beliefs as to governmental separation of powers, absolutely cannot exist. See, however, *In re Daley*, 549 F.2d 469, 479 (7th Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977) ("Under no circumstances, however, may a federal court prescribe immunity on its own initiative.

. . ."). Nevertheless, we are satisfied that, if there is such a power, at all, its application would not be called for here.

**11.** It is clear that there is no such general right. *In re Kilgo*, 484 F.2d 1215, 1222 (4th Cir. 1973):

The sixth amendment assures an accused "compulsory process for obtaining witnesses in his favor." But the authors of the Bill of Rights did not deem it essential to enhance this right by empowering the accused to confer immunity, and nowhere in the Constitution do we find any justification for conditioning the government's ability to grant immunity on a corresponding grant to private individuals.

*Cf. United States v. Alessio*, 528 F.2d 1079, 1082 (9th Cir.), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976).

should be dismissed. Reluctant thus to frustrate the public's right to have those who have committed crimes brought to justice, the court simply set forth a procedure to which the government might resort, if it wished, by which the government's misbehavior, which required dismissal of the charges, might be neutralized. *United States v. Herman*, 589 F.2d 1191, 1199–1200 (3d Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). If, to insure to the defendant the testimony to which he had been entitled, and which the government had wrongly denied him, the government chose to correct its outrageous behavior by immunizing the witness, the trial could go forward. Otherwise, the judgment of acquittal would be entered.

In those circumstances, the court's efforts to secure immunization of the witness by the government were not at the urging of the defendant. Quite to the contrary, it had become in the defendant's interest that immunity not be granted.

The other immunization case is *United States v. DePalma*, 476 F.Supp. 775 (S.D.N.Y.1979). It involved a scheme of securities fraud in which the government claimed five individuals, one of them the defendant, were involved. The government proposed to immunize the testimony of two of the others, but refused to honor the defendant's request that the remaining two, who were subject to a continuing investigation, be granted use immunity so that the defendant might have the benefit of their testimony. The district judge concluded that it resulted in basic unfairness amounting to a denial of due process for the government to pick and choose among those principally involved in the alleged scheme to defraud as to whom to call and whom effectively to bar defendant from using. That determination led him to rule, not that the two witnesses whose testimony the defendant wanted had to be immunized by the government to prevent dismissal of the charges, but rather than the testimony of the more important of the two witnesses the government proposed to call could not be received unless the government arranged things by grant of use immunity so that the other two primary witnesses as to the salient events were available to the defendant.[12]

In Klauber's case, we have no situation like that. The only immunized witness whose testimony related to an area as to

12. An antecedent of *DePalma* was *United States v. Leonard*, 161 U.S.App.D.C. 36, 494 F.2d 955, 985 f.n. 79 (D.C.Cir. 1974, Bazelon, J. concurring in part and dissenting in part). Judge Bazelon was speculating that, if the government were to introduce an out-of-court statement by a declarant expected to plead the Fifth Amendment fairness would dictate that the statement should be admitted only if the defendant were assured the right to cross-examine by the government's agreement to a grant of use immunity. No such situation is presented here. The relevance of Judge Bazelon's speculation is weakened for us by the consideration that Judge Winter, a member of this Court, sitting by designation, was the author of the D.C. Circuit's majority opinion and did not concur in what Judge Bazelon wrote.

Another antecedent was *Earl v. United States*, 324 U.S.App.D.C. 77, 80 n.1, 361 F.2d 531, 534 n.1 (D.C.Cir. 1966), in which Chief Justice Warren E. Burger, then a Circuit Judge, ruminated, but made no decision, about a situation similar to that in *DePalma*:

We might have quite different, and more difficult, problems had the Government in this case secured testimony from one eyewitness by granting him immunity while declining to seek an immunity grant for Scott to free him from possible incrimination to testify for Earl. That situation would vividly dramatize an argument on behalf of Earl that the statute *as applied* denied him due process. Arguments could be advanced that in the particular case the Government could not use the immunity statute for its advantage unless Congress made the same mechanism available to the accused. Here we are asked in effect to rewrite a statute so as to make available to the accused a procedure which Congress granted only to the Government. As *DePalma* makes clear, the problem hypothetically posed by Chief Justice Burger only arises after the defendant has sought a ruling conditioning testimony by the government's immunized witness on a grant of immunity to the witness the defendant wishes to call. That permits the government a choice of what in many cases would be a less drastic alternative: the sacrifice of the testimony by the government's witness. Klauber did not preserve any point arguably raised by the holding in *DePalma* and the rumination in *Earl*, because he did not seek to condition Powell's testimony on an immunity grant to Simons.

which Simons purportedly could testify was Powell. His involvement was peripheral, not central, to the matters charged, as was the case with the witnesses in *DePalma.* Simons' testimony would similarly go to secondary, not primary matters. Completely dispositive is the consideration that Klauber's counsel did not contend that Powell's testimony should have been excluded, absent an immunization of Simons.[13] (Sobkov, the other witness whom Simons supposedly would have contradicted, testified without immunity. He had already been convicted for his part in the matters of which Klauber was accused.)

We do not intend to be understood as acknowledging that, had Klauber preserved the point by a request that receipt of Powell's testimony be conditioned on a use immunity grant to Simons, the rationale of *DePalma* and *Earl* would have been applicable here. Other witnesses, two Fine and Klauber, P.A. former associates, Samuel Blibourn and Paul Gibbons, testified that Powell was a liar. The essential thrust of the Simons testimony which Klauber sought to obtain through use immunity was, therefore, cumulative.

Nor does the argument impress us that, inasmuch as the government had the advantage of immunized testimony from Simons at the Grand Jury, Klauber was, on fairness grounds, entitled to his immunized testimony at trial. Simons had obviously been under consideration in connection with the Grand Jury investigation and had been called to testify under an immunization. Had he not been called before the Grand Jury at all, it is difficult to see any foundation for the defendant's argument here. Following his testimony before the Grand Jury, Simons was virtually in the same position as if he had been permitted to stand upon his claim of the Fifth Amendment. *In re Kilgo,* 484 F.2d 1215, 1220 (4th Cir. 1973). And a sauce-for-the-goose, sauce-for-the-gander approach is not really pertinent. The sole consequence, for purposes of

the issue with which we are concerned, of the immunization at the Grand Jury hearing was to develop testimony potentially favorable to Klauber which he and his counsel might otherwise never have known existed. To the extent that the testimony would be favorable to Klauber, the immunization at the Grand Jury, therefore, worked to the advantage of Klauber. Without an immunization for purposes of the Grand Jury, the testimony was entirely unavailable so long as Simons chose to plead the Fifth Amendment. The fact that it remained so after the Grand Jury testimony did not, from Klauber's point of view, worsen the situation. The government's immunization of Simons before the Grand Jury, therefore, gave the government no advantage respecting the potentially favorable testimony, nor did it work any perceivable hardship on Klauber. The government's unwillingness to immunize the witness, in such circumstances, does not amount to bad faith, nor did it lead to unfairness to Klauber. This is so regardless of whether, as suggested, *supra,* the immunized Grand Jury testimony would, on *Brady* principles, have been available to Klauber and admissible in evidence if offered by him. If the Simons Grand Jury testimony were so available, absolutely all arguments based on the government's being somehow better off than the defendant evaporate.

Hence, in the final analysis, Klauber's argument comes down to a contention that, whenever a defendant wishes to call a witness and is met with a Fifth Amendment plea, there exists a universal rule requiring that the government grant use immunity on demand. *In re Kilgo,* 484 F.2d 1215, 1225 (4th Cir. 1973) is against Klauber on that point. Even a recent note sympathetic to the position of defendants would not go so far. Note, *The Sixth Amendment Right to Have Use Immunity Granted to Defense Witnesses,* 91 Harv.L.Rev. 1266 (1978).

---

13. An alleged "runner", Russell Brown, testified pursuant to an immunity agreement, but his evidence was unrelated to what the proffer indicated would be the substance of Simons' testimony.

We do not conceive it to be a responsibility of the government to make its immunization powers available to the defendant for such a purpose since the government, acting for all citizens, must conduct a balancing of interests evaluation whenever it decides whether to immunize a witness, realizing that the process almost always leads to the escape from trial and punishment of someone guilty of an offense against society and its laws. *United States ex rel. Tatman v. Anderson*, 391 F.Supp. 68, 71–2 (D.Del.1975). "The public suffers when a criminal is not prosecuted, and this detriment must be weighed carefully against the public benefit that would accrue from the information which immunity can compel. The balancing of these interests has not been left to persons unanswerable to the public." *In re Kilgo*, 484 F.2d 1215, 1222 (4th Cir. 1973).

Klauber also has raised an objection on the grounds that some of his activities which were proven at trial, while criminal, were outside the time limits set in the indictment and, therefore, were improperly admitted under Fed.R.Evid. 403. However, the testimony was closely linked to the activities charged and was relevant on the issue of intent. Fed.R.Evid. 404(b).

Defendant makes the further point that the evidence went to the intent of others in his firm and not to his individual intent. The point is not apt as to much of the complained-of evidence. However, to the extent that it does apply, the situation was one in which the defendant was one of two essentially equal partners in a law firm and the circumstances permitted the jury to infer that what was done by others in the firm under Klauber's direction and control could be imputed to him.

Klauber further complains about the jury's being informed of the Maryland barratry statute and of the Code of Professional Responsibility. Both were relevant to the attitude Klauber, as a member of the Bar, should have maintained toward practices that were proven. They were properly admissible. *United States v. Reamer*, 589 F.2d 769, 771 (4th Cir. 1978), *cert. denied*, 440 U.S. 980, 99 S.Ct. 1787, 60 L.Ed.2d 240 (1979).

AFFIRMED.