OPINION OF THE COURT
Peter P. Rosato, J.
Defendant Robert Tutoni stands charged under the instant indictment with crimes of conspiracy, fifth degree, bribery, second degree, and bribe receiving, second degree. Merv Blank and Arnold DiGregorio are named in the conspiracy and bribe receiving counts as unindicted coconspirators. Mr. Blank, as petitioner herein, now moves to expunge his name from the *672 Tutoni indictment.* In so moving, petitioner raises an issue which, to this court’s knowledge, has not squarely been addressed in this State, namely, whether it is improper to name someone in an indictment as an unindicted coconspirator.
Petitioner Blank’s first point is that the instant Grand Jury exceeded its lawful constitutional and statutory authority, as delimited by CPL 190.60, in naming him as an unindicted coconspirator. In substance, CPL 190.60 permits the Grand Jury to take 1 of 5 actions, namely, (a) to indict; (b) to direct the District Attorney to file a prosecutor’s information; (c) to direct the District Attorney to file a request for removal to the Family Court; (d) to dismiss the charges; or (e) to submit a Grand Jury report, as provided in CPL 190.85.
On a superficial level, one can say that the instant Grand Jury did in fact act within its lawful scope since it did in fact indict a person, namely, defendant Robert Tutoni. However, petitioner draws the court’s attention to the procedures attending the filing of a Grand Jury report, as set forth in CPL 190.85. Historically, as discussed in Matter of Report of August-September, 1983 Grand Jury (103 AD2d 176 [2d Dept 1984]), the current CPL 190.85 was enacted in response to the Court of Appeals ruling in Matter of Wood v Hughes (9 NY2d 144), wherein the Grand Jury’s authority to issue reports had been flatly rejected. Petitioner correctly points out that in promulgating CPL 190.85, the Legislature, in restoring such authority, took pains to afford certain safeguards and protections to those officials named in such a report, pursuant to CPL 190.85 (2) (b) and (3), i.e., the opportunity to testify at the Grand Jury and the right to have the report temporarily sealed while the official named is given time to file an answer in response. Justice Mollen, writing for a unanimous court, in Matter of Report of August-September, 1983 Grand Jury (supra, at p 182), pointed out that these protections written into CPL 190.85 were designed to safeguard the individual named in a Grand Jury report from the identical evil of concern to petitioner Blank herein, i.e., "the impugnment of character and reputation without the chance to defend or appeal.” Justice Mollen’s reasoning, it seems to this court, is no less *673 apt in regard to one named in an indictment as an unindicted coconspirator than it is in regard to a public servant or official named in a Grand Jury report.
Curiously, however, this court has been unable to find any case law in this State which has even indirectly sought to address these same concerns in the context of one named as an unindicted coconspirator. On the Federal level, petitioner cites United States v Briggs (514 F2d 794), a 1975 decision from the Fifth Circuit Court of Appeals which, in granting a motion to expunge, squarely held that a Grand Jury had in fact exceeded its powers and denied the appellants therein due process by naming them in an indictment as unindicted coconspirators. (And see, in accord, In re Smith, 656 F2d 1101 [5th Cir 1981].) On the other hand, the People cite United States v Driscoll (445 F Supp 864 [US Dist Ct NJ 1978]), where a motion to expunge the name of an unindicted coconspirator who had died prior to trial was denied on largely utilitarian grounds that the person’s name, at some point either prior to or during the anticipated trial, would inevitably become public knowledge.
To this court’s knowledge, on the one occasion where this narrow issue was before the United States Supreme Court, the court expressly chose to rule on other grounds and did not address this issue. (See, United States v Nixon, 418 US 683, and in particular p 687, n 2.)
Similarly, in the Second Circuit, no case has addressed this narrow issue, although a number of conspiracy cases have gone up to the Second Circuit wherein the existence of one or more unindicted coconspirators has been expressly noted without criticism. (See, United States v Leonardi, 623 F2d 746 [2d Cir 1980], cert denied 447 US 928 [1980]; United States v Winley, 638 F2d 560 [2d Cir 1981], cert denied 455 US 959 [1982]; United States v Angelilli, 660 F2d 23 [2d Cir 1981], cert denied 455 US 945 [1982].) The same situation appears to prevail in the appellate courts of this State. (See, People v Tomasello, 21 NY2d 143; People v Rosenberg, 45 NY2d 251; People v Di Napoli, 108 AD2d 650 [1st Dept 1985], revd and indictment reinstated 66 NY2d 812; People v Gross, 51 AD2d 191 [4th Dept 1976].) The Tomasello case (supra) is of particular interest in that there both Trial Term and the Second Department found that the defendant was a "prime target” of a criminal investigation and that he therefore had to be granted complete immunity, including immunity from a perjury charge. (See, People v Tomasello, 48 Misc 2d 156 [Sup Ct, *674 Suffolk County, Munder, J.], affd 27 AD2d 562.) The Court of Appeals, per opinion of then Chief Judge Fuld, unanimously reversed the Second Department and reinstated the indictment (21 NY2d 743, supra). However, while the Court of Appeals flatly rejected the view of the two lower courts that defendant ought to be immunized even as to giving perjurious testimony, they had no quarrel with the conclusion of Trial Term that defendant, named as an unindicted coconspirator in one count and as an aider and abettor in a second count of a separate indictment, was a "possible defendant”. If ever the opportunity was presented to criticize or denounce the practice of naming someone as an unindicted coconspirator, surely Tomasello was it. Tomasello’s very status as an unindicted coconspirator played a significant role in the court’s ultimate finding that he was entitled to some measure of immunity although not to the extent of shielding him from a charge of perjury. Nonetheless, the tactic of naming him as an unindicted coconspirator received no comment whatsoever.
Thus, a fair argument can be made that the practice of publicly naming an individual in an indictment as an unindicted coconspirator has received at least tacit recognition in New York State. At the same time, in a case such as the case at bar, where someone has already been named in an indictment, there is scant little a court can do to undo the harm caused to petitioner’s reputation, and in this case, petitioner being a builder and developer, to his financial well-being. In so many words, the damage, at least herein, is already done.
There being no point in carrying out a futile act, the court would deny petitioner’s motion to expunge. In so holding, however, this court feels compelled to make the following observations. First, to state the obvious, an indictment, as a formal accusation presumably leading up to a public trial, certainly differs markedly from a Grand Jury report. Nonetheless, it is philosophically difficult, if not impossible, to distinguish the concerns addressed by Justice Mollen in the Matter of Report of August-September, 1983 Grand Jury (supra) vis-ávis those named in a Grand Jury report from the concerns voiced by petitioner herein. In fact, those concerns appear to be one and the same. Secondly, while rulings of the Fifth Circuit Court of Appeals certainly are in no way binding upon this State’s courts, nonetheless the balancing approach adopted in Briggs (supra) appears to be a fair and reasonable one. Consonant with an indicted defendant’s right to receive fair notice of the nature of the charges brought against him, *675 there would seem to be little, if any, prejudice inuring to a defendant if the name of an unindicted coconspirator otherwise designated as "John Doe” in the indictment, for example, were provided to him well prior to trial via a bill of particulars or other pretrial discovery device. In that way, the defendant’s right to notice would be preserved while, at the same time, future unindicted coconspirators would be spared the stigma of being publicly named in a formal accusatory instrument. Suffice it to say the issues raised herein are serious and provocative ones, deserving of further consideration and reflection by other courts and by all those interested in the workings of the criminal justice system.
Finally, by way of postscript, in view of the court’s ruling denying petitioner’s motion to expunge, petitioner’s companion application to seal the moving papers submitted herein is also denied as moot.

 Petitioner Blank also moves to dismiss the instant indictment on grounds of insufficient evidence. However, as an unindicted coconspirator, Mr. Blank, in this court’s opinion, has no standing to bring on such an application. In any event, defendant Tutoni has previously moved to dismiss on that same ground, which motion was denied in all respects by decision and order of this court in People v Tutoni (dated June 4, 1986).